1  Linda M. Dardarian (SBN 131001)
   ldardarian@gbdhlegal.com
2  Andrew P. Lee (SBN 245903)
   alee@gbdhlegal.com
3  GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
4  Oakland, CA 94612
   Tel:  (510) 763-9800
5  Fax:  (510) 835-1417

6  Timothy P. Fox (SBN 157750)
   tfox@creeclaw.org
7  CIVIL RIGHTS EDUCATION AND ENFORCEMENT
   CENTER
8  104 Broadway, Suite 400
   Denver, CO 80203
9  Tel:  (303) 757-7901

10 *Attorneys for Plaintiff*

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                   **SAN JOSE DIVISION**

| | |
|---|---|
| 14  ARTIE LASHBROOK, on behalf of himself and all other persons similarly situated, | Case No.: 5:20-cv-1236 |
| 15 | **CLASS ACTION** |
| 16         Plaintiff, | **COMPLAINT FOR VIOLATIONS OF:** |
| 17  vs. | 1.  Title II of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* |
| 18  CITY OF SAN JOSE, | 2.  Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* |
| 19         Defendant. | 3.  California Government Code Section 11135, *et seq.* |
| 20 | 4.  California Civil Code § 54, *et seq.* |
| 21 | |

22

23

24

25

26

27

28

1.     Plaintiff Artie Lashbrook, on behalf of himself and all other persons similarly situated, complains of Defendant City of San Jose ("Defendant" or "the City") and alleges as follows:

## INTRODUCTION

2.     Plaintiff brings this lawsuit against the City to redress its systemic and ongoing failure to provide full and equal access to its pedestrian right of way to Plaintiff and similarly situated individuals with mobility disabilities.  As alleged further below, the City has failed and continues to fail to construct and maintain curb ramps that are necessary to make its pedestrian right of way readily accessible to people with mobility disabilities, and to comply with its obligation to construct and/or remediate curb ramps when it engages in alterations or new construction of streets, roadways, sidewalks, and other pedestrian walkways.  A substantial number of the street crossings within the City's pedestrian right of way do not comply with applicable state and federal regulations addressing accessibility for people with mobility disabilities because, for example, they lack curb ramps entirely, have curb ramps that are not contained within crosswalks, or have curb ramps that are too narrow, steep, cracked, broken, or uplifted to be used by people with mobility disabilities.

3.     The City's pedestrian right of way is a fundamental public program, service, and/or activity that the City provides for the benefit of its residents and visitors.  Accessible curb ramps are necessary to permit people with mobility disabilities to access the City's pedestrian right of way. Because the City's pedestrian right of way constitutes a core mode of transportation, the absence of accessible curb ramps prevents people with mobility disabilities from independently, fully, and meaningfully participating in all aspects of society, including employment, housing, education, transportation, public accommodations, and recreation, among others.  Accordingly, an accessible pedestrian right of way is essential to realizing the integration mandate of disability non-discrimination laws, including the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*., California Government Code § 11135 ("Section 11135"), and California Civil Code § 54 ("Disabled Persons Act" or "DPA").

4.     Plaintiff Artie Lashbrook is an individual with a mobility disability who brings this action on behalf of himself and all persons with mobility disabilities who, like Plaintiff, live in, work in, or visit San Jose.  Plaintiff, and other similarly situated persons with mobility disabilities, are being

1  denied full and equal access to the City's pedestrian right of way and subjected to unlawful or

2  hazardous conditions due to the absence of accessible curb ramps within the City's pedestrian right of

3  way.

4      5.      Federal and state disability access laws were enacted to provide persons with disabilities

5  an equal opportunity to participate fully in civic life. *See* 42 U.S.C. § 12101(a)(7) (ADA); 29 U.S.C.

6  § 794 (Section 504); Section 11135; Cal. Civil Code § 54.  Under the ADA and Section 504, a public

7  entity's sidewalks, crosswalks, and paved paths—collectively referred to as a public entity's

8  "pedestrian right of way"—are a "program," "service," or "activity" that must be readily accessible to

9  persons with mobility disabilities. *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).

10  As detailed further below, Defendant has excluded Plaintiff and all other similarly situated individuals

11  with mobility disabilities from participation in or the benefits of Defendant's pedestrian right of way

12  program, service, or activity, or subjected them to discrimination by:  a) failing to construct and

13  remediate curb ramps (i) in newly-constructed or altered portions of the City's pedestrian right of way,

14  and (ii) at crossings adjacent to newly constructed or altered roadways; and, b) failing to construct,

15  remediate and maintain curb ramps where necessary to provide people with mobility disabilities

16  meaningful access to (i) the City's pedestrian right of way, when viewed in its entirety, and (ii)

17  facilities in which City programs, services, and activities are made available to the public.

18      6.      The ADA (since January 27, 1992), Section 504 (since June 3, 1977), and Section

19  11135 (since June 24, 1980) have all mandated that whenever a government entity newly constructs or

20  alters streets, roads, or highways, it must construct curb ramps at any intersection having curbs or other

21  barriers to entry from a street level pedestrian walkway, to ensure that newly constructed or altered

22  pedestrian right of way programs and facilities are readily accessible to and usable by individuals with

23  disabilities.  28 C.F.R. § 35.151(a)(1), (b)(1), (b)(4)(i)(1), (b)(4)(i)(2); 28 C.F.R. pt. 36, app. D §

24  10.2.1; 45 C.F.R. § 84.23(b); 36 C.F.R. pt. 1191, app. D § 810.2.3; Cal. Code Regs. tit. 2 §§ 11197 &

25  11198.  The ADA, Section 504, and Section 11135 also mandate that a public entity operate each

26  program, service, or activity so that the program, service, or activity, when viewed in its entirety, is

27  readily accessible to and usable by individuals with mobility disabilities.  28 C.F.R. § 35.150(a),

28  (b)(1); 45 C.F.R. § 84.22(a), (b); Cal. Code Regs. tit. 2 § 11191(a).  To the extent structural changes

were necessary to achieve this "program access" mandate with respect to facilities existing as of the effective date of the ADA, Section 504, or Section 11135, such changes were to have been made by no later than January 26, 1995 under the ADA, no later than June 3, 1980 under Section 504, and no later than June 24, 1983 under Section 11135.  28 C.F.R. § 35.150(c); 45 C.F.R. § 84.22(d); Cal. Code Regs. tit. 2 § 11194.

7.     The City's pedestrian right of way, when viewed in its entirety, is not readily accessible to and usable by persons with mobility disabilities due to the City's failure to construct and maintain accessible curb ramps.  The City has also failed to construct and maintain accessible curb ramps necessary to allow persons with mobility disabilities to access facilities where City programs, services, and activities are provided to the public.  In addition, the City has failed to construct accessible curb ramps or remediate existing curb ramps as part of new construction or alterations of its pedestrian walkways, streets, roadways, and highways.  As a result, Plaintiff and other persons with mobility disabilities must forgo participation in daily activities — including visiting public facilities, places of public accommodation, or friends — or risk injury to themselves and/or damage to their mobility devices by traveling on or around inaccessible portions of the pedestrian right of way.  At times, Plaintiff and other individuals with mobility disabilities are able to use the pedestrian right of way, but only by taking circuitous routes to avoid barriers to accessibility, which wastes their time and energy. As a result of the many missing and noncompliant curb ramps in the City, people with mobility disabilities do not have full and equal access to the pedestrian right of way.

8.     The denial of meaningful, equal, and safe access to the City's pedestrian right of way for persons with mobility disabilities complained of herein is the direct result of Defendant's policies, procedures, and practices with regard to pedestrian walkways and disability access, including, but not limited to the following:

a.     The failure to construct accessible curb ramps at locations where no curb ramps exist, or where inaccessible curb ramps exist, within the time required by applicable state and federal disability access laws or on any other reasonable schedule;

b.      The failure to construct accessible curb ramps, or remediate existing noncompliant curb ramps, at street corners or sidewalks that are newly constructed, resurfaced or otherwise altered;

c.      The failure to construct accessible curb ramps at intersections in the City that are necessary to provide meaningful, equal, and safe access to the pedestrian right of way;

d.      The failure to develop and implement a process for identifying intersections and corners throughout the City at which curb ramps are necessary to provide meaningful, equal, and safe access to the pedestrian right of way;

e.      The failure to adopt and utilize or require and enforce the utilization of curb ramp designs that comply with applicable federal and state design standards or guidelines;

f.      The failure to construct accessible curb ramps within a reasonable time frame after receiving a request to do so or otherwise being notified of the need for an accessible curb ramp at a particular location;

g.      The failure to adopt or implement reasonable administrative methods, policies, and procedures for inspecting, repairing, and maintaining the pedestrian right of way, including curb ramps, as required by Title II of the ADA and its implementing regulations such as 28 C.F.R. § 35.133 (maintenance of accessible features);

h.      The failure to remediate corners with no curb ramps or with curb ramps that are not properly positioned such that they require pedestrians with mobility disabilities to travel outside of crosswalks or designated pedestrian street crossings in order to access pedestrian rights of way;

i.      The failure to remediate curb ramps that are designed and/or constructed in a noncompliant manner such that people with mobility disabilities are denied meaningful access to the pedestrian right of way as a whole.  These deficiencies often include one or more of the following:

i.      Running, cross, and side slopes of curb ramps that are excessively steep;

ii.      Ramps that are too narrow to accommodate wheelchairs or scooters;

iii.      Landings at the top of curb ramps that do not provide enough space for a wheelchair to maneuver onto or off the ramp, forcing persons with mobility disabilities to use the much steeper side flares or roll off the sidewalk entirely;

4

iv.  Excessive counter slopes at the bottoms of curb ramps. The combination of excessive curb ramp slopes and/or gutter pan counter slopes often forces wheelchair users to scrape the paving with their foot rests and can bring a wheelchair or scooter to a full stop, creating risks of falling and injury;

v.  Lips at the bottom of curb ramps where the ramp meets the gutter. Such non-flush transitions create additional risks of scraping the pavement and/or sudden stops and possible falls and injury. Federal disability access standards have required smooth transitions at the base of curb ramps for several decades; and

vi.  Obstacles in the path of curb ramps, such as utility and traffic signal poles, which prevent the curb ramps from being accessed.

9.  These administrative methods, policies, and practices, or lack thereof, discriminate against persons with mobility disabilities by denying them access to the City's pedestrian right of way in its entirety, as well as facilities in which City programs, services, and activities are made available to the public. As of January 2019, 21,068 curb ramps, or 88% of all curb ramp within the City, were non-compliant with applicable standards. Moreover, 6,772 locations within the City where curb ramps are required lack curb ramps.

10.  For decades, Defendant has failed to meet ADA, Section 504, and California state accessibility requirements, and failed to adopt and implement systemic efforts to ensure that the City's pedestrian right of way is readily accessible to and useable by persons with mobility disabilities. The City failed to do a comprehensive survey and self-evaluation of its curb ramps and was not following its Transition Plan regarding curb ramps. This lawsuit seeks a court order requiring the City to finally comply with these laws and to provide people with mobility disabilities meaningful access to the City's pedestrian right of way over 25 years after the enactment of the ADA, over 40 years after enactment of Section 504's disability rights protections, and nearly 40 years after the enactment of California's disability rights protections.

11.  Plaintiff thus brings this action to remedy violations of Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, and its accompanying regulations, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* and its accompanying regulations, California Government Code § 11135, *et seq.* and its

1    accompanying regulations.  Plaintiff seeks injunctive relief pursuant to the above statutes and an award

2    of reasonable attorneys' fees, expenses, and costs under applicable law.

3        12.    On February 24, 2014, Plaintiff approached the City to resolve this dispute through

4    structured negotiations, rather than litigation.  On March 28, 2014, the parties entered into an

5    agreement to toll the statute of limitations while the parties engaged in structured negotiations.

6        13.    On February 1, 2017, the parties entered into an Interim Settlement Agreement that set

7    forth certain preliminary obligations that the parties fulfilled while they continued to negotiate toward

8    a full resolution of this dispute.  The Interim Settlement Agreement required the City to complete a

9    survey of all curb ramps and corners of sidewalk segments at pedestrian crossings within the City's

10   pedestrian right of way for compliance with applicable federal and state disability access standards.

11       14.    Following the completion of the comprehensive curb ramp survey, the parties

12   negotiated and finalized a Consent Decree that fully resolves Plaintiff's class claims for injunctive

13   relief.  Accordingly, Plaintiff files this action with the intention of submitting the proposed Consent

14   Decree to the Court for preliminary approval, seeking authorization from the Court to provide notice of

15   the class action settlement to the class, and then requesting an order from the Court granting final

16   approval to the proposed Consent Decree.

17                              **JURISDICTION AND VENUE**

18       15.    This is an action for injunctive relief, brought pursuant to Title II of the ADA, 42

19   U.S.C. §§ 12101 to 12213, Section 504, 29 U.S.C. § 794, *et seq.*, California Government Code §

20   11135, *et seq.*, and California Civil Code § 54, *et seq.*, to redress systemic civil rights violations

21   against individuals with mobility disabilities by the City of San Jose.

22       16.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for

23   claims arising under the ADA and Section 504.

24       17.    This Court has jurisdiction to issue injunctive relief pursuant to 28 U.S.C. §§ 2201 and

25   2202, and Rule 65 of the Federal Rules of Civil Procedure.

26       18.    Under the doctrines of pendent and supplemental jurisdiction, this Court has jurisdiction

27   over the claims arising under California's Section 11135 and the Disabled Person's Act.  28 U.S.C. §

28   1367.

753916.14

19.     Venue over Plaintiff's claims is proper in the Northern District of California, San Jose Division because Defendant resides in the Northern District of California within the meaning of 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiff's claims occurred in the San Jose Division of the Northern District of California.

## PARTIES

20.     Named Plaintiff Artie Lashbrook is a resident of the City of San Jose.  Plaintiff Lashbrook has a mobility disability and uses a wheelchair for mobility.  Plaintiff Lashbrook is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California Government Code § 12926.

21.     The Plaintiff class consists of all persons with mobility disabilities who use or will use the pedestrian right of way in the City of San Jose through the date of judgment in this action.

22.     Hereafter, references in this document to "Plaintiff" shall be deemed to include the Named Plaintiff and each member of the class, unless otherwise indicated.

23.     Presently, and at all times relevant to this complaint, Defendant City of San Jose has been a public entity within the meaning of Title II of the ADA, has received federal financial assistance within the meaning of the Rehabilitation Act of 1973 sufficient to invoke its coverage, and has received state financial assistance within the meaning of California Government Code § 11135.

24.     The City is a local government entity with the responsibility of providing Plaintiff with access to its public facilities, programs, services, and activities.  The City is responsible for constructing, maintaining, repairing, and regulating its pedestrian right of way.

## FACTS APPLICABLE TO ALL CLAIMS

25.     As a result of Defendant's policies and practices with regard to curb ramps in the City's pedestrian right of way, people with mobility disabilities have been discriminated against and denied full and equal access to the benefits of the City's pedestrian right of way program or service, and to facilities in which City programs, services, and activities are made available to the public.

26.     Hereafter, an "Inaccessible" curb ramp shall refer to a curb ramp that did not comply with applicable standards for accessible design (*i.e.*, the Uniform Federal Accessibility Standards

("UFAS"), 1991 ADA Standards for Accessible Design ("ADAAG"), the 2010 ADA Standards for Accessible Design ("2010 ADAS"), or the applicable version of the California Building Code ("CBC")), at the time it was constructed or altered.

27.     Across the City, there are thousands of locations where curb ramps are required but are missing.  And even where curb ramps exist, many are improperly constructed and/or maintained, lack a flush transition to the street, have excessively steep running, cross, and side slopes, are too narrow, lack required clear space and top and bottom landings, and/or are otherwise noncompliant.  Many other curb ramps are not maintained; they are broken, cracked, crumbled, sunken, and/or caved.

28.     As a result of Defendant's policies and practices with regard to curb ramps, large segments of the City's pedestrian right of way do not comply with disability access requirements for new construction or alterations.  For example, prior to 2006, the City consistently failed to construct curb ramps and remediate existing curb ramps when it altered or constructed sidewalks and streets.

29.     Defendant has failed to construct, remediate, repair, and maintain curb ramps as required by law.  From approximately January 2017 through March 2018, the City conducted a comprehensive survey of existing curb ramps and curb ramp locations within the City.  The survey was the result of the parties' structured negotiation and required by the Parties' Interim Settlement Agreement.  The survey revealed that there are 23,990 existing curb ramps within the City.  As of January 2019, 21,068 curb ramps, or 88% of all curb ramps within the City, were non-compliant with applicable standards.  14,611 of those non-compliant curb ramps contain "High Priority Curb Ramps Barriers."  "High Priority Curb Ramps Barriers" include the following: 1) missing curb ramps; 2) curb ramps with less than 32 inches clear width; 3) curb ramps with running slows exceeding 10%; 4) curb ramps with cross slopes exceeding 4%; 5) curb ramps with non-flush transitions; 6) curb ramps with counter slopes exceeding 10%; 7) curb ramps with side flare slopes exceeding 12.5%; 8) curb ramps with side flare slopes exceeding 10% where top landings are not provided; 9) curb ramps with gaps or vertical edges greater than 1 inch; 10) parallel curb ramps with bottom landings that have slopes exceeding 4%; 11) parallel curb ramps with top landings that have slopes exceeding 4%; 12) parallel curb ramps with top landings that have running slopes exceeding 10%; 13) curb ramps with a combination of non-compliant running slopes, counter slopes, and non-flush transitions.  There were

753916.14

an additional 6,457 curb ramps within the City that do not comply with federal and state accessibility standards, but are not defined as "High Priority Curb Ramps Barriers." Moreover, there were 6,772 locations within the City where curb ramps are required but are missing.

30.     As a result of the many missing and noncompliant curb ramps at intersections throughout the City, the pedestrian right of way, viewed in its entirety, is inaccessible to persons with mobility disabilities. Plaintiffs and others with mobility disabilities are denied meaningful access to the City's pedestrian right of way, public buildings, parks, transportation, places of employment, and/or other facilities in which City programs, services, and activities are made available to the public, either through complete denials of access or through delay of travel or unsafe conditions.

31.     This lack of accessible curb ramps is not isolated or limited. Rather, these barriers to full and equal access to the pedestrian right of way exist throughout the City, thus denying individuals with mobility disabilities full, equal, and meaningful access to the pedestrian right of way City-wide. Persons with mobility disabilities encounter missing or Inaccessible curb ramps throughout the City, including, among others, in the areas surrounding Mt. Pleasant High School, Lynbrook High School, Booksin Elementary School, Almaden Elementary, Calabazas Branch Library, Stratford School, and Stevens Creek Blvd and S. Monroe Street neighborhoods. As a result, persons with mobility disabilities have been denied access to the accommodations and services available to the general public. Furthermore, these barriers deter persons with mobility disabilities from exploring or visiting areas of the City. Missing and Inaccessible curb ramps also delay travel and cause persons with mobility disabilities to fear for their safety, as these conditions often create dangerous situations.

32.     Defendant has not provided and does not provide persons with mobility disabilities with any map (whether paper or electronic), signage, or other form of notice of any routes, or parts of routes, in the City's pedestrian right of way that are accessible to persons with mobility disabilities. Notice of completed accessibility improvements and plans for scheduled accessibility improvements are not posted on the City website, and notice of such information is not made otherwise available to persons with mobility disabilities. As a result of the lack of any notice, maps, or signage regarding the location of accessible routes within the City's pedestrian right of way, persons with mobility disabilities have been and continue to be deterred from and impeded in travelling to various parts of

9

753916.14

the City, thus denying them meaningful and equal access to the City's pedestrian right of way and its other facilities, programs, services, and activities.

33.     Defendant failed to prepare and implement a compliant Transition Plan relating to the construction and maintenance of curb ramps in the pedestrian right of way as required by federal and California law.  State law incorporates as a minimum standard the protections and prohibitions contained in Section 202 of the ADA (42 U.S.C. § 12132) and the federal rules and regulations adopted in implementation thereof.  Cal. Code Regs. tit. 2 §§ 11188 and 11195.  The federal regulations implementing Section 504 of the Rehabilitation Act required public entities that receive federal financial assistance to create Transition Plans by June 3, 1978.  45 C.F.R. § 84.22(e).  The regulations implementing Title II of the ADA required local governmental entities to create Transition Plans by July 26, 1992.  28 C.F.R. § 35.150(d).  The regulations implementing California Government Code § 11135 were promulgated on June 24, 1980, and required local governmental entities to complete self-evaluations within one year and implement a Transition Plan within three years.  A Transition Plan must include, among other things, an up-to-date schedule for providing curb ramps or other sloped areas where the pedestrian right of way crosses streets.  See 28 C.F.R. § 35.150(d)(3); 45 C.F.R. § 84.22(e); Cal. Code Regs. tit. 2 § 11195.  The City developed an ADA Transition Plan in 1994 and updated its Transition Plan in 2008 and again in 2010.  The Transition Plan, however, does not include a schedule for the construction of curb ramps or locations, nor does it identify the steps necessary to achieve program access—the Plan states simply that curb ramp project "Needs Study." Additionally, the Transition Plan was incomplete in that it was not based on a comprehensive "Self-Evaluation," or survey of the City's curb ramps and other facilities where City programs, services and activities are carried out.

34.     Defendant's failure to conduct a timely Self Evaluation and prepare and implement a compliant Transition Plan relating to the pedestrian right of way, including curb ramps, as required by Section 504, the ADA, and analogous state law, is further evidence of Defendant's failure to comply with the "program access" requirements of the statutes.

35.     This discrimination and continuing systemic inaccessibility cause a real and immediate threat of current and continuing harm to persons with mobility disabilities within the City as represented by the experiences of the Named Plaintiff.

**FACTS APPLICABLE TO PLAINTIFF**

36.     Plaintiff Artie Lashbrook has lived in the City of San Jose since the late 1960s, and has used a wheelchair since approximately 2011.  Plaintiff experienced numerous barriers to access and unsafe conditions while attempting to use curb ramps within the City of San Jose, including missing and non-compliant curb ramps.

37.     Over the years, Plaintiff has encountered hundreds of locations in various neighborhoods where curb ramps in the City's pedestrian right of way are either missing or inaccessible.  Plaintiff Lashbrook resided for several years near the intersection of Monterey Road and Edenview Drive.  Plaintiff's ability to navigate the pedestrian right of way in his own neighborhood was severely hampered by the lack of accessible curb ramps throughout the pedestrian right of way, including three non-compliant curb ramps at the northeast, southeast, and southwest corners of the intersection of Monterey Road and Edenview Drive.  He also encountered a non-compliant curb ramp at the southeast corner of Monterey Road and Roeder Road.  Given that these non-compliant curb ramps were adjacent to Mr. Lashbrook's home, he had no option but to encounter these ramps when he left his home to engage in his community.

38.     Since August 2017, Plaintiff has lived in the Mt. Pleasant neighborhood.  There, he encountered two missing curb ramps at the intersection of Mt. Palomar Drive and Mt. Vista Drive, and two missing curb ramps at the intersection of Mt. Vista Drive and Mt. Herman Drive.  Those corners lacked curb ramps until approximately June 2018.  Plaintiff continues to encounter missing curb ramps at the intersections of Mt. Palomar Drive and Mt. Hood Way, Mr. Palomar Drive and Mt. McKinley Drive, and Mt. McKinley Drive and White Road.

39.     In addition, on three specific occasions, inaccessible curb ramps have caused Plaintiff significant personal injuries.  In November 2014, Plaintiff was injured attempting to use the non-compliant curb ramp at the intersection of Monterey Road and Roeder Road discussed above.  As he descended the curb ramp, the wheel of Plaintiff's wheelchair became lodged in a large surface gap at

the bottom of the curb ramp.  As a result, he was thrown out of his wheelchair and into the direct path of oncoming traffic.  Plaintiff remained lying in the street unable to move.  During that time, Plaintiff feared for his safety, frightened by the possibility of being struck by a vehicle.  After approximately five minutes, two uniformed police officers observed him in distress and blocked traffic while helping him back into his chair.

40.     In March 2015, Plaintiff experienced a similar incident at the intersection of North Market Street and West Santa Clara Street.  Like the first incident, one of the front wheels on his wheelchair struck a surface gap as he descended the curb ramp located on the northwest corner of the intersection.  He was thrown out of his wheelchair into the crosswalk and required help from bystanders to get back into his wheelchair.  The other incident occurred at the intersection of Cottle Road and Beswick Drive in January 2017.  There, Plaintiff encountered a non-flush transition at the bottom of the curb ramp located on the northwest corner of this major intersection.  Plaintiff's wheelchair tipped over, causing him to fall into the channelized right-turn lane.  He remained there for approximately ten minutes, again fearful, anxious, and concerned for his safety, until the driver of passing truck stopped and helped him back into his wheelchair.

41.     These experiences are typical of those experienced by persons with mobility disabilities in the City and demonstrate the inaccessibility, fear, humiliation, and isolation that people with mobility disabilities experience while trying to navigate the City's pedestrian right of way.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action individually, and on behalf of all persons with mobility disabilities who use or will use the pedestrian right of way in the City of San Jose, as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

43.     Each member of the class is a "qualified person with a disability" and/or a person with a "disability" pursuant to 42 U.S.C. § 12131(2); Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, and 2 C.C.R. § 11187.  The persons in the class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court.  The class consists of tens of thousands of persons with mobility disabilities.

44.     Defendant has failed and continues to fail to comply with the ADA, Section 504, and analogous state law in its implementation of the City's administrative methods, policies, procedures, and practices with regard to the construction, remediation, and maintenance of curb ramps that provide access to the City's pedestrian right of way.

45.     Defendant has not adopted and does not enforce appropriate administrative methods, policies, procedures, and/or practices to ensure that it is in compliance with the ADA, Section 504, and analogous state law, and to ensure nondiscrimination against persons with mobility disabilities and equal access to facilities, programs, services, and activities for persons with mobility disabilities.

46.     The violations of the ADA, Section 504, and related California state statutes set forth in detail herein have injured all members of the proposed class and violated their rights in a similar way.

47.     Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.  Class claims are brought for the purposes of obtaining injunctive relief only.

48.     The claims of the Named Plaintiff are typical of those of the class in that they arise from the same course of conduct engaged in by Defendant.  The relief sought herein will benefit all class members alike.

49.     Named Plaintiff will fairly and adequately represent the interests of the class.  He has no interests adverse to the interests of other members of the class and has retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases involving the accessibility of municipal pedestrian rights of way for classes of individuals with mobility disabilities.

50.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

a.     The class is so numerous that it would be impractical to bring all class members before the Court;

b.     There are questions of law and fact which are common to the class;

c.     The Named Plaintiff's claims for injunctive relief are typical of the claims of the class;

753916.14

1    d.    The Named Plaintiff will fairly and adequately represent common class interests

2    and is represented by counsel who are experienced in law reform class actions and the disability rights

3    issues in this case; and

4    e.    Defendant has acted or refused to act on grounds generally applicable to the

5    class.

6    51.    The common questions of law and fact, shared by the Named Plaintiff and all class

7    members, include but are not limited to:

8    a.    Whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*,

9    by failing to construct or remediate curb ramps that make the City's pedestrian right of way program,

10   service, or activity accessible to and useable by persons with mobility disabilities, and otherwise

11   discriminating against persons with mobility disabilities, as set forth above;

12   b.    Whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*,

13   by failing to construct or remediate curb ramps that make facilities in which City programs, services,

14   or activities are made available to the public accessible to and useable by persons with mobility

15   disabilities, and otherwise discriminating against persons with mobility disabilities, as set forth above;

16   c.    Whether Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C.

17   section 794 *et seq.*, by failing to construct or remediate curb ramps that make the City's pedestrian

18   right of way program, service, or activity accessible to and useable by persons with mobility

19   disabilities, and otherwise discriminating against people with mobility disabilities, as set forth above;

20   d.    Whether Defendant is violating Section 504 of the Rehabilitation Act, 29 U.S.C.

21   section 794 *et seq.*, by failing to construct or remediate curb ramps that make facilities in which City

22   programs, services, or activities are made available to the public accessible to and useable by persons

23   with mobility disabilities, and otherwise discriminating against persons with mobility disabilities,

24   set forth above;

25   e.    Whether Defendant is violating California Government Code § 11135, *et seq.*,

26   by failing to construct or remediate curb ramps that make the City's pedestrian right of way program,

27   service, or activity accessible to and useable by persons with mobility disabilities, and otherwise

28   discriminating against people with mobility disabilities, as set forth above;

f.       Whether Defendant is violating California Government Code § 11135, *et seq.*, by failing to construct or remediate curb ramps that make facilities in which City programs, services, or activities are made available to the public accessible to and useable by persons with mobility disabilities, and otherwise discriminating against persons with mobility disabilities, as set forth above;

g.       Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 28 C.F.R. § 35.151, triggering an obligation to construct or retrofit curb ramps to be compliant with UFAS, 1991 ADAAG or 2010 ADAS;

h.       Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 45 C.F.R. § 84.23, triggering an obligation to construct or retrofit curb ramps to be compliant with UFAS, 1991 ADAAG, or 2010 ADAS;

i.       Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of Cal. Code Regs. tit. 2 §§ 11197 & 11198, triggering an obligation to construct or retrofit curb ramps to be complaint with the CBC;

j.       Whether Defendant, by its actions and omissions alleged herein, has engaged in a pattern or practice of discriminating against Plaintiff and other persons with mobility disabilities in violation of applicable federal and state disability access laws.

### FIRST CLAIM FOR RELIEF
**Title II of the Americans with Disabilities Act of 1990**
**42 U.S.C. § 12101 *et seq.***

52.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

53.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

54.     At all times relevant to this action, the City was and is a "public entity" within the meaning of Title II of the ADA and provides a pedestrian right of way program, service, or activity to the general public.

753916.14

55.     At all times relevant to this action, Plaintiff was and is a qualified individual with a disability within the meaning of Title II of the ADA and meets the essential eligibility requirements for the receipt of the services, programs, or activities of the City.  42 U.S.C. § 12131.

56.     Defendant is mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities."  28 C.F.R. § 35.150; see also 28 C.F.R. § 35.149.  This requirement applies to all programs, services, and activities that a public entity offers, whether or not they are carried out in facilities that have been constructed or altered since January 26, 1992.  Pedestrian rights of way themselves constitute a vital public program, service, or activity under Title II of the ADA.  28 C.F.R. § 35.104; *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002).

57.     Furthermore, the regulations implementing Title II of the ADA specifically provide that a public entity must construct curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after January 26, 1992 and must comply with UFAS, ADAAG, or 2010 ADAS depending on the date of construction or alteration.  28 C.F.R. § 35.151.  *Kirola v. City & Cty. of San Francisco*, 860 F.3d 1164, 1176 (9th Cir. 2018).   A street resurfacing project by a public entity is one example of an alteration under the meaning of the regulation.  *Kinney v. Yersalim*, 9 F.3d 1067, 1073-74 (3rd Cir. 1993); *Lonberg v. City of Riverside*, No. 97-CV-0237, 2007 WL 2005177, at * 6 (C.D. Cal. 2007).

58.     The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible by the ADA.  28 C.F.R. § 35.133.  Facilities required to be accessible include roads, walks, and passageways.  28 C.F.R. § 35.104.

59.     Due to the lack of accessible curb ramps as alleged above, as well as Defendant's failure to conduct a timely Self Evaluation and implement a compliant Transition Plan for the pedestrian right of way, the City's pedestrian right of way is not fully, equally, or meaningfully accessible to Plaintiff when viewed in its entirety.  Nor are the facilities in which City programs, services, and activities are made available to the public.  Defendant has therefore violated the "program access" obligation applicable to pedestrian right of way facilities that have not been newly constructed or altered since January 26, 1992.

60.     Additionally, the sidewalks, cross walks, and other walkways at issue constitute facilities within the meaning of ADA and its implementing regulations.  Plaintiff is informed, believes, and thereon alleges that since January 26, 1992, Defendant has constructed, altered, or repaired parts of these facilities within the meaning of the ADA and its implementing regulations, and that Defendant, through its administrative methods, policies, and practices, has failed to make such facilities readily accessible to and usable by persons with disabilities through the construction and retrofit of curb ramps as required under federal accessibility standards and guidelines.

61.     Plaintiff is informed, believes, and thereon alleges that since March 15, 2012 (the effective date of the 2010 Standards for Accessible Design), Defendant has constructed, altered, or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that Defendant, through its administrative methods, policies, and practices, has failed to make such facilities readily accessible to and usable by persons with disabilities through the construction and retrofit of curb ramps that comply with the 2010 ADAS, as required under 28 C.F.R. 35.151(c)(5).

62.     Plaintiff is informed, believes, and thereon alleges that Defendant and its agents and employees have violated and continue to violate Title II of the ADA by failing to maintain the features of the City's curb ramps that are required to be accessible.

63.     Plaintiff is informed, believes, and thereon alleges that Defendant and its agents and employees have violated and continue to violate Title II of the ADA by failing to timely respond to and remedy complaints regarding the lack of accessible curb ramps necessary to ensure access to the City's pedestrian right of way.

64.     The ADA's regulations at 43 C.F.R. § 17.550(a)(3) prevent public entities from refusing to comply with their obligations to provide persons with disabilities meaningful access to their services, programs and activities in or comprised of facilities existing as of the ADA's effective date by claiming that doing so would impose an undue financial or administrative burden, unless such a determination is made by an agency head or his or her designee after consulting all agency resources available for use in the funding and operation of the conducted program or activity and the determination is accompanied by a written statement of the reasons for reaching that conclusion.  On information and belief, the City, through its agency heads and/or designees, has failed to make such a

17

753916.14

1    determination accompanied by the required written statement and has, therefore, failed to demonstrate

2    that providing the access Plaintiff seeks to its pedestrian right of way would impose an undue financial

3    or administrative burden.

4    65.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered and

5    continues to suffer difficulty, hardship, anxiety, and danger due to Defendant's failure to remediate

6    missing, defective, and/or Inaccessible curb ramps throughout the City's pedestrian right of way.

7    These failures have denied and continue to deny Plaintiff the full, equal, and meaningful access to the

8    pedestrian right of way that the ADA requires.

9    66.    Because Defendant's discriminatory conduct presents a real and immediate threat of

10   current and continuing future violations, injunctive relief is an appropriate remedy.

11   67.    Pursuant to 42 U.S.C. §§ 12133 and 12205, Plaintiff is entitled to injunctive relief as

12   well as reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

### SECOND CLAIM FOR RELIEF
### Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794 *et seq.*

15   68.    Plaintiff incorporates by reference each and every allegation contained in the foregoing

16   paragraphs.

17   69.    Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o

18   otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be

19   excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

20   any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794(a).

21   70.    Plaintiff is otherwise qualified to participate in the services, programs, or activities that

22   are provided to individuals in the City.  See 29 U.S.C. § 794(b).

23   71.    The City is a direct recipient of federal financial assistance sufficient to invoke the

24   coverage of Section 504 and has received such federal financial assistance at all times relevant to the

25   claims asserted in this Complaint.

26   72.    Defendant and its agents and employees have violated and continue to violate the

27   Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiff from

28   participation in, denying Plaintiff the benefits of, and subjecting Plaintiff based solely by reason of his

18

753916.14

disability to, discrimination in the benefits and services of the City's pedestrian right of way and for the reasons set forth above.

73.     Additionally, under Section 504, a recipient of federal financial assistance must construct ADAS-, ADAAG- or UFAS-compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads, and/or highways at any time after June 3, 1977.  *Willits v. City of Los Angeles*, 925 F. Supp. 2d. 1089, 1094 (C.D. Cal. 2013).  Defendant has violated Section 504 by failing to construct such compliant curb ramps at intersections throughout the City where it has newly constructed sidewalks or newly constructed or altered streets, roads, and/or highways since June 3, 1977.

74.     As a direct and proximate result of the aforementioned acts, Plaintiff suffered and continues to suffer discrimination, difficulty, hardship, anxiety, and danger due to Defendant's failure to remediate missing, defective, and/or Inaccessible curb ramps throughout the City's pedestrian right of way.  These failures have denied Plaintiff the full, equal, and meaningful access to the pedestrian right of way that Section 504 requires.

75.     Because Defendant's discriminatory conduct presents a real and immediate threat of current and continuing violations, injunctive relief is an appropriate remedy.

76.     Pursuant to 29 U.S.C. § 794(a), Plaintiff is entitled to injunctive relief, and to recover from Defendant the reasonable attorneys' fees and costs incurred in bringing this action.

### THIRD CAUSE OF ACTION
**California Government Code § 11135**

77.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

78.     Section 11135(a) of the California Code provides in pertinent part: "No person in the State of California shall, on the basis of . . . disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded by the state or receives any financial assistance from the state."

79.     The City is funded directly by the State of California and receives financial assistance from the State of California sufficient to invoke the coverage of Section 11135.  The City has received

753916.14

1  such funding and financial assistance each year going back at least several decades, and at all times

2  relevant to the claims asserted in this Complaint.  Section 11135(b) incorporates the protections and

3  prohibitions contained in the Americans with Disabilities Act ("ADA") and its implementing

4  regulations.  Section 11135 (b) states in pertinent part, that:

5      With respect to discrimination on the basis of disability, programs and
activities subject to subdivision (a) shall meet the Americans with
6      Disabilities Act of 1990 (42 U.S.C. § 12132), and the federal rules and
regulations adopted in implementation thereof, except that if the laws of
7      this state prescribe stronger protections and prohibitions, the programs and
activities subject to subdivision (a) shall be subject to stronger protections
8      and prohibitions.

9      80.    For all of the reasons outlined above, Defendant has violated and continues to violate

10  the Americans with Disabilities Act and therefore has violated and continues to violate California

11  Government Code § 11135(b).

12      81.    In addition, Defendant and its agents and employees have and continue to violate

13  Section 11135 and the regulations promulgated thereunder by excluding Plaintiff from participation in,

14  denying Plaintiff the benefits of, and subjecting Plaintiff based solely by reason of his disability to,

15  discrimination in the benefits and services of the City's pedestrian right of way for the reasons set forth

16  above.

17      82.    Additionally, under Section 11135, a recipient of state financial assistance must newly

18  construct or alter pedestrian facilities in compliance with applicable state accessibility standards.  Cal.

19  Code Regs. tit. 2 § 11199.  Defendant has violated Section 11135 by failing to construct or alter curb

20  ramps in compliance with state accessibility standards since June 24, 1980.

21      83.    Defendant has refused and failed to provide Plaintiff with full and equal access to its

22  facilities, programs, services and activities as required by Section 11135 through its policies and

23  practices with regard to the City's pedestrian rights of way and disability access.

24      84.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered and

25  continues to suffer difficulty, hardship and danger, due to Defendant's failure to provide access to the

26  City's pedestrian rights of way.

27

28

753916.14

85.     Because Defendant's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

86.     Plaintiff is also entitled to reasonable attorneys' fees and costs in filing this action.

WHEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**Disabled Persons Act**
**California Civil Code § 54**

87.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

88.     Plaintiff asserts this cause of action for injunctive relief on behalf of the class but seeks damages pursuant to the California Disabled Persons Act ("DPA") on an individual basis only.

89.     The DPA provides that "[i]ndividuals with disabilities or medical conditions have the same rights as the general public to the full and free use of streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ. Code § 54(a).

90.     Plaintiff is a person with a disability within the meaning of California Civil Code § 54(b) and California Government Code § 12926.

91.     By failing to provide reasonable and equal accommodations to Plaintiff in light of, and based upon, Plaintiff's disability, Defendant has deprived Plaintiff of his right to full and free use of public facilities, including streets, highways, sidewalks, walkways, and public buildings, and therefore violates California Civil Code § 54.

92.     Under California Civil Code § 54(c), a violation of the Americans with Disabilities Act also constitutes a violation of California Civil Code § 54 *et seq*.

93.     For all the reasons outlined above, Defendants violated the rights of Plaintiff under the Americans with Disabilities Act, and therefore violated California Code § 54.

94.     Under California Civil Code § 55, any person who is aggrieved or potentially aggrieved by a violation of California Civil Code § 54 may bring an action to enjoin the violation.  Plaintiff therefore seeks injunctive relief on behalf of himself and the class to enjoin Defendant's violation of Civil Code § 54 as set forth in detail in the above paragraphs.

753916.14

95.     The DPA also provides that "[a]ny person or persons, firm or corporation who denies or interferes with the rights of an individual with a disability under Sections 54, 54.1, and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2." Cal. Civ. Code § 54.3(a).

96.     As a direct and proximate result of the aforementioned acts, Plaintiff Lashbrook has suffered and continues to suffer difficulty, discomfort, and embarrassment.

97.     Plaintiff Lashbrook seeks an award of damages on behalf of himself on an individual basis.  Plaintiff is entitled to actual and statutory damages in an amount up to a maximum of three times the amount of his actual damages. Cal. Civ. Code § 54.3.

98.     Under California Civil Code § 54 *et seq*., Plaintiff is entitled to attorneys' fees and costs.

99.     Under the California Government Claims Act, no person may sue a government entity for "money or damages" unless that person presents a claim to the government entity within six months of accrual, which is then rejected by the government entity.  Cal. Gov't. Code §§ 905, 911.2, 945.4.  The requirements of the California Government Claims Act must be satisfied by the aggrieved party, or waived by the government entity, in order for such a claim to be actionable.

100.    The City has waived the claim presentation requirements of the California Government Claims Act as they relate to Plaintiff Lashbrook.  Moreover, Plaintiff's claims are timely as they are subject to a statute of limitations tolling agreement that took effect on March 28, 2014.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

THEREFORE, Plaintiff requests judgment as follows:

1.      Certification of Plaintiff's claims as a Class Action and certification of Plaintiff as Class Representative and his counsel as Class Counsel.

753916.14

2.      Issuance of a permanent injunction requiring Defendant to undertake remedial measures to mitigate the effects of Defendant's past and ongoing violations of Title II of the ADA, Section 504 of the Rehabilitation Act, California Government Code § 11135, California Civil Code § 54, and any regulations promulgated under those statutes.  At a minimum, Defendant must be enjoined to take the following actions:

a.      Ensure that the City constructs, remediates, repairs, and maintains curb ramps such that, when viewed in its entirety, the City's pedestrian right of way is readily accessible to and useable by individuals with mobility disabilities;

b.      Ensure that the City constructs, remediates, repairs, and maintains curb ramps such that facilities in which City programs, services, and activities are made available to the public are readily accessible to and useable by individuals with mobility disabilities;

c.      Ensure prompt remedial measures to cure past violations of the City's duty to construct or alter curb ramps as required by the new construction and alteration obligations of Title II of the ADA, 28 C.F.R. § 35.151(a), (b), (c) or (i), and Section 504, 45 C.F.R. § 84.22, and the curb ramp design standards in effect at the time of such new construction or alterations;

d.      Ensure that all future new construction and alterations to the City's curb ramps fully comply with the 2010 ADA Standards for Accessible Design, or other federal and state disability access design standards, whichever is most stringent in its disability access requirements;

e.      Ensure that Defendant adopts and implements administrative methods, policies, and practices to maintain accessible curb ramps; and

f.      Remain under this Court's jurisdiction until Defendant fully complies with the Orders of this Court;

3.      Reasonable attorneys' fees, expenses, and costs, as provided by law;

4.      Monetary relief to Plaintiff Lashbrook, including an award of damages pursuant to Cal. Civil Code § 54.3;

5.      Such other relief as the Court finds just and proper.

753916.14

1

Dated:  February 19, 2020

Respectfully submitted,

2

GOLDSTEIN, BORGEN, DARDARIAN & HO

3

4

 *s/Andrew P. Lee*

5

Andrew P. Lee

6

*Attorneys for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT - CASE NO. 5:20-CV-1236

753916.14