1  Linda M. Dardarian (SBN 131001)
   ldardarian@gbdhlegal.com
2  Andrew P. Lee (SBN 245903)
   alee@gbdhlegal.com
3  Beth Holtzman (SBN 316400)
   bholtzman@gbdhlegal.com
4  GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
5  Oakland, CA 94612
   Tel:  (510) 763-9800
6  Fax:  (510) 835-1417

7  Timothy P. Fox (SBN 157750)
   tfox@creeclaw.org
8  CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
   1245 E. Colfax Avenue, Suite 400
9  Denver, CO 80218
   Tel:  (303) 757-7901

10

11  *Attorneys for Plaintiff and the proposed Settlement Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ARTIE LASHBROOK, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>CITY OF SAN JOSE,<br><br>            Defendant. | **CLASS ACTION**<br><br>Case No.: 20-CV-01236-NC<br><br>**NOTICE OF JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     May 27, 2020<br>Time:     1:00 p.m.<br>Place:    Court Room 5<br>Before:   Hon. Nathanael Cousins |

765328.25

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 27, 2020 at 1 p.m., in the Courtroom of the Honorable Nathanael Cousins, Magistrate Judge of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California, Plaintiff Artie Lashbrook and Defendant City of San Jose will and hereby do jointly move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order:

a. Granting preliminary approval of the parties' proposed class action Consent Decree and the exhibits attached thereto (collectively, "Consent Decree" and filed concurrently herewith) entered into between the parties;

b. Certifying the proposed Settlement Class and appointing Plaintiff Lashbrook and his counsel as representatives of the Settlement Class;

a. Approving the parties' proposed notice program, including the proposed form of notice, as set forth in the Consent Decree, and directing that notice be disseminated pursuant to such program;

b. Setting a Final Approval Hearing and certain other dates in connection with the final approval of the Settlement Agreement.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, including all exhibits thereto, the accompanying declarations of Linda M. Dardarian, Tim P. Fox, and Artie Lashbrook, the argument of counsel, all papers and records on file in this case, and such other matters as the Court may consider.

Dated:  April 21, 2020

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Andrew P. Lee*
Andrew P. Lee

*Attorneys for Plaintiff and the proposed Settlement Class*

Dated:  April 21, 2020

THE CITY OF SAN JOSE

*/s/Nora V. Frimann*
Nora V. Frimann

*Attorneys for the City of San Jose*

1

765328.25

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 1

III. SUMMARY OF PROPOSED SETTLEMENT ............................................................ 4

    A. The Settlement Class ............................................................................................. 4

    B. Injunctive Relief .................................................................................................... 4

        1. Installation and Remediation of Curb Ramps ........................................... 4

        2. Prioritization and Transition Plan ............................................................. 6

        3. Curb Ramp Request Program .................................................................... 6

        4. Maintenance .............................................................................................. 7

        5. Reporting ................................................................................................... 7

        6. Monitoring ................................................................................................ 8

        7. Dispute Resolution ................................................................................... 8

        8. Release of Class Claims ............................................................................ 8

    C. Payments to Plaintiff Lashbrook ........................................................................... 9

    D. Class Counsel's Attorneys' Fees, Expenses, and Costs ........................................ 9

IV. LEGAL ARGUMENT .................................................................................................... 9

    A. The Settlement Class Merits Class Certification. ................................................. 9

        1. Plaintiff's Claims Are Inherently Systemic and Therefore Appropriate for Class-Wide Resolution. ....................................................................... 9

        2. Legal Standard .......................................................................................... 10

        3. The Requirements of Rule 23(a) Are Met. ............................................... 11

            a. The Settlement Class Is Sufficiently Numerous. ........................... 11

            b. There Are Questions of Law and Fact Common to the Class. ............. 11

        4. Plaintiff's Claims Are Typical of the Class. ............................................. 12

        5. Plaintiff Is an Adequate Class Representative. .......................................... 13

        6. Plaintiff's Counsel Are Adequate to Represent the Class and Satisfy the Requirements of Rule 23(g). ..................................................................... 13

i

765328.25

        7.      The Requirements of Rule 23(b)(2) Are Satisfied. ......................................... 16

    B.      The Consent Decree Is Fair, Reasonable, and Adequate, and Should Be
            Approved. ................................................................................................ 17

        1.      Class Counsel Have Adequately Represented the Settlement Class. ............... 17

        2.      The Consent Decree Was Negotiated at Arm's Length. ................................ 17

        3.      The Consent Decree Represents an Outstanding Result for the Settlement
                Class ............................................................................................................... 19

        4.      The Consent Decree Treats Class Members Equitably Relative to Each
                Other. ............................................................................................................. 22

    C.      The Proposed Notice Satisfies Due Process and Should Be Approved. ..................... 22

    D.      The Court Should Approve the Proposed Scheduling Order, Including Setting a
            Date for the Fairness Hearing. ....................................................................... 24

V.      CONCLUSION ........................................................................................................ 24

765328.25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assoc., Inc.*,
   731 F.3d 952 (9th Cir. 2013) .................................................................. 11

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................. 16

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .................................................................. 10

*Barden v. City of Sacramento*,
   292 F.3d 1073 (9th Cir. 2002) ................................................................ 10

*In re Bluetooth Headset Products Liability Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................ 9, 18, 19

*Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*
   249 F.R.D. 334 (N.D. Cal. 2008) ...................................................*passim*

*Castaneda v. Burger King*,
   No. C 08-04262 WHA 2010 WL 2735091 (N.D. Cal. July 12, 2010).......................... 20

*Churchill Vill, LLC v. GE.*,
   361 F.3d 566 (9th Cir. 2004) .................................................................. 23

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ............................................................ 22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)........................................................*passim*

*In re Hyundai and Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019).................................................................... 9

*King v. City of Colorado Springs*,
   No. 1:19-cv-00829-JLK (D. Colo. Oct. 1, 2019) ........................................ 15

*Laguna v. Coverall N. Am., Inc.*,
   753 F.3d 918 (9th Cir. 2014) ............................................................ 18, 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ........................................................................ 22, 23

765328.25

*Muniz v. UPS*,
  738 F.3d 214 (9th Cir. 2013) .................................................................................. 21

*In re MyFord Touch Consumer Litig.*,
  No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 53356 ...................................... 19, 22

*Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ...................................................................................... 16

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................. 24

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................................................. 16

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) ........................................................................... 11

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................. 22

*Villalpando v. Exel Direct Inc.*,
  303 F.R.D. 588 (N.D. Cal. 2014) ........................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................................... 11, 12

*Walters v. Reno*,
  145 F. 3d 1032 (9th Cir. 1988) ............................................................................... 16

*Willits et al. v. City of Los Angeles*,
  No. CV 10-05782 CBM (RZx), 2011 U.S. Dist. LEXIS 155103 (C.D. Cal Jan. 3,
  2011) .............................................................................................................. *passim*

**Docketed Cases**

*Barden, et al. v. City of Sacramento*,
  No. 2:99-cv-00497-MCE-JFM (E.D. Cal.) ............................................................. 17

*Denny v. City and County of Denver*,
  No. 2016CV030247 (Denver Dist. Court) ............................................................... 15

*Hines v. City of Portland*,
  No. 3:18-cv-00869-HZ (D. Ore.) .............................................................. 14, 15, 16

*Ochoa, et al. v. City of Long Beach*,
  No. 2:14-cv-04307-DSF-FFM (C.D. Cal.) ................................................... 10, 14, 17

*Reynoldson v. City of Seattle*,
  No. CV 15-01608 BJR (W. D. Wash.) ............................................................ 14, 15

iv

765328.25

**Federal Statutes**

Americans with Disability Act of 1990 ............................................................................ *passim*

Rehabilitation Act of 1973 § 504 ............................................................... 9, 14, 15, 16

**State Statutes**

Cal. Code Regs. tit. 2
    § 11197 ............................................................................................................... 12
    § 11198 ............................................................................................................... 12

California Civil Code § 54, *et seq.* ...................................................................... 12

California Government Code § 11135, *et seq.* ................................................... 12

**Rules**

Fed. R. Civ. P.
    23 .................................................................................................................... 9, 17
    23(a) ....................................................................................................... 10, 11, 13
    23(a)(1) ............................................................................................................ 11
    23(a)(3) ............................................................................................................ 12
    23(a)(4) ............................................................................................................ 13
    23(b) ................................................................................................................ 10
    23(b)(2) ............................................................................................... 10, 16, 24
    23(e) ....................................................................................................... 1, 2, 17
    23(e)(1) ............................................................................................................ 22
    23(e)(1)(B)(i) .................................................................................................. 17
    23(e)(2) ..................................................................................................... 17, 22
    23(e)(2)(A) ...................................................................................................... 17
    23(e)(2)(B) ...................................................................................................... 17
    23(e)(2)(C) ................................................................................................. 19, 21
    23(e)(3) ............................................................................................................ 19
    23(g) ......................................................................................................... 13, 17
    23(g)(1)(A) ...................................................................................................... 13
    23(h) ................................................................................................................. 9

**Regulations**

28 C.F.R.
    § 35.150 ...................................................................................................... 6, 21
    § 35.150(a) ........................................................................................................ 5
    § 35.150(d) ........................................................................................................ 6
    § 35.151 ........................................................................................................... 12
    § 35.151(a) ........................................................................................................ 5
    § 35.151(a)(2) ................................................................................................... 5
    § 35.151(b) ........................................................................................................ 5
    § 35.151(b)(2) ................................................................................................... 5

v

765328.25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

45 C.F.R.
   § 84.22(e) ................................................................................................................ 6, 7, 8
   § 84.23 ......................................................................................................................... 12

PLS.' MEM. OF POINTS & AUTHORITIES IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 20-CV-01236-NC

## I.     __INTRODUCTION__

Plaintiff Artie Lashbrook ("Plaintiff" or "Plaintiff Lashbrook") and Defendant City of San Jose ("Defendant" or "City") seek preliminary approval of a proposed Consent Decree that requires the City to construct and remediate 27,621 curb ramps on City streets by the end of 2038, and to appropriate in excess of $130 million over the term of the Consent Decree to fund this curb ramp work.  Settlement Class Members will have the opportunity to request curb ramp construction and remediation at specific locations. The City is obligated to use best efforts to resolve these requests within 120 days.  The Consent Decree also includes effective mechanisms for reporting, monitoring, and dispute resolution to ensure that the parties comply with their obligations to the Settlement Class throughout the term of the Consent Decree.  Balanced against the cost, delay, and risks of further litigation, the injunctive relief provided by the Consent Decree is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e) and satisfies all of the criteria for preliminary settlement approval.  Accordingly, the parties respectfully request that the Court: (i) preliminarily approve the settlement; (ii) certify the proposed Settlement Class and appoint the Plaintiff Lashbrook as Settlement Class Representative and Plaintiff's attorneys as Class Counsel; (iii) approve the proposed form of the class notice and distribution plan; and (iv) set a fairness hearing.

## II.     __FACTUAL BACKGROUND__

Plaintiff and proposed Settlement Class representative Artie Lashbrook is a life-long resident of the City of San Jose and a person with a mobility disability who uses a wheelchair for mobility.  Declaration of Artie Lashbrook ("Lashbrook Decl.") ¶ 2.  Plaintiff Lashbrook does not own an automobile and relies on public transportation and the pedestrian right of way to get around the City.  *Id.* ¶ 3.  Plaintiff, however, has encountered numerous barriers to access while attempting to use curb ramps within the City of San Jose, including non-compliant, missing, and unsafe curb ramps.  *Id.* ¶ 4.  From September 2013 to the present— the period during which Plaintiff Lashbrook's claims have been tolled by agreement of the parties—he estimates having over three thousand separate encounters with non-compliant curb ramps.  *Id.* ¶ 5.  The majority of these non-compliant curb ramps were located along routes connecting his residences to bus stops and grocery stores, and therefore could not be avoided.

For example, in November 2014, the front wheel of Plaintiff's wheelchair became lodged in a large

1

Pls.' Mem. of Points & Authorities in Support of Mot. for Prelim. Approval of Class Action Settlement
Case No. 20-CV-01236-NC

765328.25

surface gap at the bottom of a curb ramp at the intersection of Monterey Road and Roeder Road.  *Id.* ¶ 8.  As a result, he was thrown out of his wheelchair and onto the pavement of that busy thoroughfare.  *Id.*  Plaintiff Lashbrook remained lying in the street unable to move.  *Id.*  He feared for his safety, frightened by the possibility of being struck by a vehicle.  *Id.*  After approximately five minutes, two uniformed police officers observed him in distress and blocked traffic while helping him back into his chair.  *Id.*  In March 2015, Plaintiff was similarly thrown out of his wheelchair while descending a curb ramp at the intersection of North Market Street and West Santa Clara Street in downtown San Jose, and required assistance from bystanders to get back into his wheelchair.  *Id.*  And in January 2017, Plaintiff's wheelchair tipped over and he fell into a channelized right-turn lane after encountering a non-flush transition at the bottom of the curb ramp located at the intersection of Cottle Road and Beswick Drive.  *Id.*  He remained in the street for approximately ten minutes until the driver of a passing truck helped him back into his wheelchair.  *Id.*

The conditions described above occur throughout the City's pedestrian right of way and similarly affect all of the City's residents and visitors who have mobility disabilities and use wheelchairs, scooters and other mobility devices.  Declaration of Linda M. Dardarian ("Dardarian Decl.") ¶ 2.

On February 24, 2014, Class Counsel sent a letter to the City of San Jose asserting that Plaintiff and other City residents and visitors with mobility disabilities have been denied access to the City's pedestrian right of way because of a lack of accessible curb ramps throughout the City.  Dardarian Decl. ¶ 5.  Plaintiff's letter highlighted the inaccessibility of the City's pedestrian right of way, and proposed that the parties work cooperatively to resolve Plaintiff's claims through structured negotiations rather than litigation.  *Id.*  The City agreed, and in August 2014, the parties entered into an agreement that tolled the statute of limitations on Plaintiff's claims and identified the issues that would be addressed through structured negotiations.  *Id.*  Over the next two and a half years, the parties exchanged information regarding the status of existing curb ramps in the City's pedestrian right of way, the City's past and present policies concerning curb ramp construction and remediation, the legal obligations created by disability non-discrimination laws, and the parties' settlement positions.  *Id.*

In November 2016, the parties finalized an Interim Settlement Agreement that set forth certain preliminary obligations while they continued to negotiate a full resolution of Plaintiff's claims.  Dardarian

2
PLS.' MEM. OF POINTS & AUTHORITIES IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 20-CV-01236-NC

765328.25

Decl. ¶ 6.  The Interim Settlement Agreement required the City to spend up to $500,000 to hire a consultant to perform a complete survey of the City's curb ramps to identify all locations that were missing curb ramps and assess existing curb ramps for compliance with applicable federal and state accessibility standards.  *Id.*  The curb ramp survey was divided into two phases: automated and manual.  *Id.*  The automated portion of the survey was performed using specialized optical equipment to determine the presence or absence of curb ramps at required curb ramp locations.  *Id.*  The manual portion of the survey involved on-site inspections of existing curb ramps to determine compliance with slope, surface, and other dimensional requirements.  *Id.*  The Interim Settlement Agreement also required the City to construct approximately 2,700 curb ramps over a two-year period and resolve curb ramp requests within one-hundred twenty (120) days of submission.  *Id.*

The City completed its curb ramp survey in April 2018.  Dardarian Decl. ¶ 7.  It revealed that there were 22,885 existing curb ramps within the City.  *Id.*  20,849 curb ramps, or 91% of all curb ramps within the City, were non-compliant with applicable disability access standards set forth in the 2010 Americans with Disabilities Act Access Standards ("2010 ADAS") or Title 24 of the California Building Code ("Title 24" or "CBC").  *Id.*  The survey found that 6,772 curb ramps were missing from locations where they are required, and 14,611 existing non-compliant curb ramps contained "High Priority Curb Ramps Barriers." [1] *Id.*  Another 6,238 curb ramps did not comply with federal and state accessibility standards, but were not defined as "High Priority Curb Ramps Barriers."  *Id.*

With the survey completed, the parties proceeded to negotiate the Consent Decree that is presently before the Court.  Dardarian Decl. ¶ 8.  As a result of the parties' robust negotiations and cooperative information sharing, the parties have reached an agreement that provides complete relief with respect to

---

[1] "High Priority Curb Ramps Barriers" include the following: 1) locations that are missing curb ramps (missing curb ramps are in addition to the 14,611 existing non-compliant High Priority Curb Ramps identified above); 2) curb ramps with less than 32 inches clear width; 3) curb ramps with running slopes exceeding 10%; 4) curb ramps with cross slopes exceeding 4%; 5) curb ramps with non-flush transitions; 6) curb ramps with counter slopes exceeding 10%; 7) curb ramps with side flare slopes exceeding 12.5%; 8) curb ramps with side flare slopes exceeding 10% where top landings are not provided; 9) curb ramps with gaps or vertical edges greater than 1 inch; 10) parallel curb ramps with bottom landings that have slopes exceeding 4%; 11) parallel curb ramps with top landings that have slopes exceeding 4%; 12) parallel curb ramps with top landings that have running slopes exceeding 10%; and, 13) curb ramps with a combination of non-compliant running slopes, counter slopes, and non-flush transitions.

3

Pls.' Mem. of Points & Authorities in Support of Mot. for Prelim. Approval of Class Action Settlement
Case No. 20-CV-01236-NC

765328.25

1   Plaintiff's claims on a reasonable timeline.  *Id.*  Based upon extensive analysis of the facts and the

2   applicable law, and taking into account the risks, uncertainties, and delays associated with further litigation,

3   Class Counsel has concluded that the Consent Decree provides substantial benefits to the Settlement Class,

4   is fair, reasonable, and adequate, and in the best interest of the Settlement Class.  *Id* ¶ 9.  The City has

5   likewise concluded that settlement of this matter is desirable to avoid the time, risk, and expense of

6   defending protracted litigation, to fulfill its long-standing obligations to residents and visitors with mobility

7   disabilities, and to resolve the claims of the Plaintiff and Settlement Class.  *Id.*

8   ### III.    SUMMARY OF PROPOSED SETTLEMENT

9           The Consent Decree, attached in full as Exhibit B to the Dardarian Declaration, filed in conjunction

10  herewith, includes the following negotiated and agreed-upon terms:

11  **A.    The Settlement Class**

12          The Settlement Class, as set forth in the Consent Decree, is defined as follows: all persons

13  (including residents of and/or visitors to the City of San Jose) with any Mobility Disability,[2] who, at any

14  time prior to the Court granting final approval of the Consent Decree, have been denied full and equal

15  access to the City's pedestrian right of way due to the lack of a curb ramp or a curb ramp that was

16  damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use.  Consent Decree

17  § 2.19; Dardarian Decl. ¶ 12.  The Settlement Class seeks injunctive relief only.  It does not seek damages.

18  **B.    Injunctive Relief**

19          **1.    Installation and Remediation of Curb Ramps**

20          The Consent Decree ensures that the City will remediate all missing and non-compliant curb ramps

21  by 2038.  It requires the City to construct 6,772 missing curb ramps and remediate 14,611 High Priority

22  curb ramps by the end of 2030.  The remaining 6,238 non-compliant curb ramps that are not High Priority

23  will be remediated by 2038 (collectively "Curb Ramp Construction Commitment").  Consent Decree § 4.3.

24  On average, the City will construct or remediate 1,944 High Priority curb ramps per year (more than three

25  times the average rate of construction before the parties commenced negotiations) between the effective

26  date and 2030, and 807 Low Priority curb ramps per year between the years 2031 and 2038.  Consent

27

28  [2] Capitalized terms are defined in Section 2 of the Consent Decree.

4

765328.25

Decree § 5.2.  All curb ramp construction and remediation will be performed in compliance with federal and state disability access standards,[3] and will count towards the Curb Ramp Construction Commitment.  *See* 28 C.F.R. §§ 35.150(a), 35.151(a), (b).

In order to ensure that the City meets the Curb Ramp Construction Commitment, the Consent Decree also requires the City to appropriate thirteen million dollars ($13,000,000.00) each fiscal year ("Annual Monetary Commitment") toward the construction and remediation of curb ramps within the City until 2030.  Consent Decree § 5.1.  After 2030, the City is required to appropriate a minimum of ten (10) percent of the City's pavement budget toward the construction and remediation of curb ramps until the City fulfills its obligations under the Consent Decree.  *Id.*

The Curb Ramp Construction Commitment and Annual Monetary Commitment are concurrent obligations that must each be met during the term of the Consent Decree.  Consent Decree §§ 4 & 5.  In other words, the Consent Decree requires that the City appropriate the Annual Monetary Commitment each year and meet the milestones established by the Curb Ramp Construction Commitment.  The City, however, retains some flexibility in how it will remediate the curb ramp barriers identified through the survey.  For example, if the City is unable to appropriate the Annual Monetary Commitment due to a recession, it will remain compliant with the Consent Decree so long as it maintains an average rate of curb ramp construction and remediation of at least 1,944 high priority curb ramps between the Effective Date through 2030 or 807 low priority curb ramps per year between 2031 and 2038.  *Id.* § 5.2.  The City will also remain compliant if it demonstrates that the sum of the appropriations for the two previous fiscal years plus the fiscal year with appropriations below the Annual Monetary Commitment is equal to three times the Annual Monetary Commitment.  *Id.*  Finally, the City will also remain compliant if it agrees to an additional appropriation over the next two fiscal years that is the equivalent of the difference between the

---

[3] The only exceptions arise where installation or upgrade is structurally impracticable, in conjunction with new construction, *see* 28 C.F.R. § 35.151(a)(2), or technically infeasible, in conjunction with alteration of an existing facility, *see* 28 C.F.R. § 35.151(b)(2).  If the City determines that installation or remediation of a curb ramp at a particular location is structurally impracticable or technically infeasible, the City will ensure that any ramp that is constructed or remediated complies with accessibility standards to the maximum extent feasible.  Determinations of structural impracticability or technical infeasibility will be supported by adequate documentation.  The City is not required to install curb ramps where sidewalks do not exist or on corners where there is no legal crossing.

5

765328.25

1  Annual Monetary Commitment and the appropriation below the Annual Monetary Commitment.  *Id.*

2      Additionally, the Consent Decree outlines procedures to address the elimination of two funding

3  sources, Measure B – City of San Jose – Sales Tax, or the Road Repair and Accountability Act of 2017 (SB

4  1 – 2017-18 California legislative session) by local or statewide ballot measure, an act of the California

5  State Legislature, or court order.  Consent Decree § 27.  This includes the City providing prompt notice to

6  Class Counsel regarding funding status, using best efforts to find alternate funding sources to fulfill the

7  Annual Monetary Commitment, and the parties' resorting to a thorough Dispute Resolution process.  *Id.* §

8  27.1-27.3.  If that process is not successful, Plaintiff is entitled to discovery regarding the City's financial

9  status and ability to appropriate the Annual Monetary Commitment and may file a motion with the District

10  Court to enforce or modify the Consent Decree.  *Id.* § 27.4.  Plaintiff may also seek court approval to

11  terminate the Consent Decree and litigate Plaintiff's claims on behalf of himself and the Class.  *Id.*

12      **2.      Prioritization and Transition Plan**

13      Curb ramps constructed or remediated pursuant to the City's program access obligation (which

14  covers locations that are not subject to new construction or alteration) will be prioritized pursuant to two

15  sets of factors.  First, to the extent possible, the City will prioritize the remediation of High Priority Curb

16  Ramp Barriers.  Consent Decree § 8.1.  Program Access improvements will also be prioritized consistent

17  with ADA regulations.  *See* 28 C.F.R. § 35.150; Consent Decree § 8.1.

18      The prioritization of curb ramp construction will be set forth in the City's updated ADA Transition

19  Plan, which, within two years of the effective date of the Decree, will be formally amended in compliance

20  with 28 C.F.R. § 35.150(d) and 45 C.F.R. § 84.22(e), and with input from Class Counsel.  *Id.* § 2.24,

21  §§10.1-10.3.

22      **3.      Curb Ramp Request Program**

23      The Consent Decree also requires the City to maintain a program through which people with

24  mobility disabilities may submit requests for the construction or remediation of curb ramps in specific

25  locations throughout the City.  Consent Decree § 11.1.  Curb Ramp Requests can be made through an

26  easily locatable form on the City's website that complies with Web Content Accessibility Guidelines

27  (WCAG), telephone, electronic mail, standard mail, and other non-onerous methods for making requests.

28

765328.25

*Id.* § 11.1.  Significantly, in addition to notifying requestors of the status of their request, the City must use best efforts to investigate each request within thirty (30) days and construct or remediate each requested curb ramp within one-hundred twenty (120) days of submission of the request.  *Id.* § 11.4.  If the City is unable to fulfill the Curb Ramp Request by the estimated date, the City must notify the requestor and provide a revised estimated date by which the Accessible Curb Ramp will be constructed, remediated, or maintained.  *Id.* § 11.3.  Individual requests that exceed $100,000 in estimated costs will be exempt from the 120-day deadline.  *Id.* § 11.4.

### 4.  **Maintenance**

The Consent Decree requires the City to maintain all Accessible Pedestrian Facilities over which it has responsibility, ownership or control so that those facilities are readily accessible to and usable by persons with Mobility Disabilities, except for isolated or temporary interruptions in access due to maintenance or repairs.  Consent Decree § 12.  If Accessible Curb Ramps are not available due to maintenance or repairs, the City must provide an alternative accessible route.  *Id.*  The City must identify the alternative route through signage at the subject location.  *Id.*

### 5.  **Reporting**

The Consent Decree also requires the City to provide Plaintiff with a written report ("Annual Report") regarding the status of the City's compliance with the Consent Decree, including the number of curb ramps constructed and remediated and their locations, and the number and locations of curb ramps constructed and remediated via the curb ramp request program described above.  If applicable to the reporting period, the report will also include: (1) dollars appropriated and expended for Accessible Curb Ramps during the reporting period; (2) the number of missing curb ramps constructed, and High and Low Priority Curb Ramps remediated during the reporting period; (3) the status of all pending Curb Ramp Requests received by the City during the reporting period, including applicable response times; and (4) the number of non-compliant curb ramps constructed to the maximum extent feasible, or not constructed, due to Technical Infeasibility or Structural Impracticability.  *Id.* § 13.1.

The City will also ensure that Plaintiff has access to the City's GIS Database or equivalent databases upon Plaintiff's reasonable request throughout the term of the Decree.  *Id.* § 13.2.

7

PLS.' MEM. OF POINTS & AUTHORITIES IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 20-CV-01236-NC

765328.25

### 6.    Monitoring

Throughout the Term of the Consent Decree, the City is required to notify Plaintiff and Class Counsel of any changes to the City's drawings and/or designs regarding Accessible Curb Ramps and provide Plaintiff and Class Counsel with updated curb ramp drawings and/or designs.  Consent Decree § 14.  Plaintiff and Class Counsel may inspect newly constructed or altered curb ramps in order to monitor compliance with the Consent Decree.  *Id.*  Plaintiff and Class Counsel are also entitled to review the City's survey database and curb ramp construction database.  *Id.*

### 7.    Dispute Resolution

The Court will retain jurisdiction to enforce the Consent Decree.  If either party believes that a dispute exists relating to any violation of or failure to perform any of the provisions, that party will first provide a written statement describing the alleged violation or failure with particularity, after which the other party will have deadlines to provide a written response and cure the alleged violation or failure to perform.  Consent Decree § 16.1.  If the violation or failure is not cured within that time frame, the parties will meet and confer in person or by telephone, and attempt to resolve the dispute on an informal basis for a period of at least thirty (30) days.  *Id.*  If the Parties are unable to resolve the dispute informally, they will try to resolve it through mediation.  *Id.* § 16.2.  If mediation fails, then either party may file a motion with the Court to enforce the Consent Decree.  *Id.* § 16.3.

### 8.    Release of Class Claims

In exchange for the injunctive relief proposed in the Consent Decree, Plaintiff and members of the settlement class shall release any injunctive, declaratory, or non-monetary claims against the City that were brought, could have been brought, or could be brought now or in the future by the Settlement Class relating to or arising from any of the City's alleged actions, omissions, incidents, or conduct related to the installation, remediation, repair or maintenance of curb ramps in the City's pedestrian right of way at any time prior to the effective date of the Consent Decree through the end of the Term.  Consent Decree § 18.  The release excludes claims for monetary damages, personal injuries or property damage with respect to unnamed Settlement Class Members.  *Id.*  It also excludes claims based on components of the City's sidewalk system other than curb ramps.  *Id.*

8

Pls.' Mem. of Points & Authorities in Support of Mot. for Prelim. Approval of Class Action Settlement
Case No. 20-CV-01236-NC

765328.25

**C.      Payments to Plaintiff Lashbrook**

Subject to Court approval, the City will pay Plaintiff Lashbrook $5,000 in recognition of the services he rendered to the Settlement Class.  Consent Decree § 17.  Class Counsel will file a separate motion for approval of the proposed $5,000 service award along with their motion for reasonable attorneys' fees, expenses, and costs.  *Id.* § 15.5.  Plaintiff Lashbrook will also receive a damages payment of $50,000 in exchange for a release of all monetary claims, including actual and statutory damages claims, related to his personal encounters with non-compliant curb ramps.  Consent Decree § 19.

**D.      Class Counsel's Attorneys' Fees, Expenses, and Costs**

Plaintiff will move separately for an award of reasonable attorneys' fees, expenses, and costs in the amount of $734,627.50 pursuant to Rule 23(h) of the Federal Rules of Civil Procedure.  Consent Decree § 20.  Plaintiff will seek reasonable attorneys' fees pursuant to the "lodestar" method.  *See, e.g.*, *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  Plaintiff will also seek reimbursement for costs of $12,300, which includes all costs incurred to date as well as additional costs that will be incurred between now and the effective date of the Consent Decree.  Consent Decree § 20.

Finally, the City will pay Plaintiff's reasonable attorneys' fees, expenses, and costs for work done in connection with monitoring the Decree, subject to limitations specified in the Decree, including caps of $75,000 per year for years 2020 through 2022, and $50,000 per year for years 2023 through the Term of the Decree.  Consent Decree § 21.1.  The Decree also provides compensation to the prevailing party for dispute resolution under civil rights law.  *Id.* § 21.4.

## IV.      LEGAL ARGUMENT

**A.      The Settlement Class Merits Class Certification.**

### 1.      Plaintiff's Claims Are Inherently Systemic and Therefore Appropriate for Class-Wide Resolution.

Federal Rule of Civil Procedure 23 was designed for civil rights cases such as this one.  The Ninth Circuit has explained that cases like this that allege systemic non-compliance with Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") are well-

9

765328.25

suited to class certification because all of the factual and legal issues that will determine the public entity's liability focus exclusively on the defendant's acts and omissions. *See Armstrong v. Davis*, 275 F.3d 849, 868-70 (9th Cir. 2001). Similarly, where the plaintiff alleges widespread barriers that are the result of system-wide policy failures, courts favor certification because they can assess the public entity's liability without having to separately adjudicate the effect of each alleged barrier on individual class members. *See, e.g., Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*, 249 F.R.D. 334, 345-46 (N.D. Cal. 2008) ("*Caltrans*").

Accordingly, in cases such as this one, where the Plaintiff alleges widespread physical access barriers resulting from a public entity's system-wide policy failures, federal courts have repeatedly and routinely certified classes of persons with mobility impairments affected by such barriers. Indeed, every Judge in this Circuit that has addressed class certification in the context of contested allegations involving system-wide barriers on a public entity's pedestrian rights of way has certified the proposed class. *See, e.g., Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002); *Kirola v. City and County of San Francisco*, No. C 07-03685 SBA (N.D. Cal. June 7, 2010) (ECF No. 285); *Caltrans*, 249 F.R.D. at 345; *Willits v. City of L.A.*, No. CV 10-05782 CBM (RZx), 2011 U.S. Dist. LEXIS 155103, at *n.5 (C.D. Cal. Jan. 3, 2011); *Ochoa, et al. v. City of Long Beach*, No. 2:14-cv-04307-DSF-FFM (C.D. Cal. Sept. 15, 2015) (ECF No. 90). In short, it is highly likely that Plaintiff's claims would be certified irrespective of settlement.

### 2.  Legal Standard

In accordance with Federal Rule of Civil Procedure 23(a), class certification is proper if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition, the proposed class must be certifiable under one of the three sub-provisions of Rule 23(b). Here, the parties seek certification under Rule 23(b)(2), pursuant to which class certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate to the class as a whole." Fed. R. Civ. P. 23(b)(2).

765328.25

### 3. The Requirements of Rule 23(a) Are Met.

#### a. The Settlement Class Is Sufficiently Numerous.

Numerosity demands that a class be large enough that joinder of all members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  In this district, courts have routinely found that 40 class members is sufficient to meet the numerosity requirement.  *Villalpando v. Exel Direct Inc*., 303 F.R.D. 588, 605-06 (N.D. Cal. 2014); *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("Although the 20–member class in this case could be considered 'a jurisprudential rarity,' [] the small class size does not preclude a finding that the numerosity requirement is met.").

There are approximately 156,778 individuals residing in the San Jose Census County Division who have a mobility disability.  *See* U.S. Census Bureau, American Fact Finder, Table B99185, Allocation of Ambulatory Difficulty for the Civilian Non-institutionalized Population 5 Years and Over; Dardarian Decl. ¶ 52.  Such evidence is sufficient to establish numerosity.  *See Caltrans*, 249 F.R.D. at 347; *Willits*, 2011 U.S. Dist. LEXIS 155103, at *8.  Thousands more individuals with mobility disabilities likely travel through San Jose each year due to its status as a major technology hub and tourist destination.  Accordingly, the Settlement Class likely numbers in the hundreds of thousands, making joinder highly impracticable.  As such, the numerosity requirement of Rule 23(a) is satisfied.

#### b. There Are Questions of Law and Fact Common to the Class.

The commonality prerequisite concerns the existence of questions of law and/or fact common to the class and is "construed permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  To satisfy commonality, at least one common contention must be capable of classwide resolution.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[T]he key inquiry is not whether the plaintiffs have raised common questions, . . . but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'"  *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wal-Mart*, 564 U.S. at 351).

Plaintiff's claims, as set forth in the Complaint, raise several common issues of law and fact, including the following:

11

765328.25

1.      Whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq*., California Government Code § 11135, *et seq*., and California Civil Code § 54, *et seq.* by failing to construct or remediate curb ramps that make the City's pedestrian right of way program, service, or activity accessible to and useable by persons with mobility disabilities;

2.      Whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq*., California Government Code § 11135, *et seq*., and California Civil Code § 54, *et seq.* by failing to construct or remediate curb ramps that make facilities in which City programs, services, or activities are made available to the public accessible to and useable by persons with mobility disabilities;

3.      Whether Defendant has performed "new construction" and/or "alterations" to the City's pedestrian right of way within the meaning of 28 C.F.R. § 35.151, 45 C.F.R. § 84.23, and Cal. Code Regs. tit. 2 §§ 11197 & 11198, triggering an obligation to construct or retrofit curb ramps in compliance with Uniform Federal Accessibility Standards ("UFAS"), 1991 Americans with Disabilities Act Accessibility Guidelines ("1991 ADAAG"), 2010 ADAS, and Title 24;

4.      Whether Defendant, by its actions and omissions alleged herein, has had a policy of discriminating against Plaintiff and other persons with mobility disabilities in violation of applicable federal and state disability access laws.

These common questions of law and fact rely on common contentions that are not affected by the circumstances of any individual class member.  Such questions are therefore capable of generating common answers and thus are appropriate for class-wide resolution.  *Wal-Mart*, 564 U.S. at 351.

**4.      Plaintiff's Claims Are Typical of the Class.**

The typicality prerequisite of Rule 23(a)(3) is met if Plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020. Like all members of the Settlement Class, Plaintiff has a mobility disability.  Lashbrook Decl. ¶ 2.  Plaintiff alleges the same harm, relies on the same legal theories, and seeks the same declaratory and injunctive relief as all members of the Settlement Class.  Plaintiff alleges that, like all members of the Settlement

Class, he is routinely denied access to the City's pedestrian right of way as a result of the City's systemic policies and practices regarding the construction, repair and maintenance of curb ramps in the City's pedestrian right of way.  *See* Compl. ¶¶ 36-41; *Caltrans*, 249 F.R.D. at 345; *Willits*, 2011 U.S. Dist. LEXIS 155103, at **12-13.

### 5.   Plaintiff Is an Adequate Class Representative.

The adequacy prerequisite of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Proposed class representatives and their counsel may not have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class.  *Hanlon*, 150 F.3d at 1020.  Here, the interests of the Plaintiff and putative class members are aligned.  The harm that Plaintiff alleges and the injunctive relief that he requests is generalizable to the entire Settlement Class.  Additionally, Plaintiff is committed to improving access for persons with mobility disabilities, has acted vigorously to pursue injunctive relief on behalf of the entire Settlement Class over a six-year period, and will monitor implementation of the Consent Decree if it is approved.  Lashbrook Decl. ¶¶ 10-14.  He is not aware of any conflicts of interest that would affect his ability to fairly and adequately protect the interests of the Settlement Class.  *Id.*; *Caltrans*, 249 F.R.D. at 348; *Willits*, 2011 U.S. Dist. LEXIS 155103, at **13-14.

### 6.   Plaintiff's Counsel Are Adequate to Represent the Class and Satisfy the Requirements of Rule 23(g).

Pursuant to Federal Rule of Civil Procedure 23(g)(1)(A), the court must assess four factors in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Here, all four factors weigh in favor of appointing Goldstein Borgen Dardarian & Ho ("GBDH") and the Civil Rights Education and Enforcement Center ("CREEC") as class counsel.

First, the work performed by Class Counsel has resulted in a complete understanding of the class claims resolved by the Consent Decree.  During the structured negotiations process, Class Counsel received

13

PLS.' MEM. OF POINTS & AUTHORITIES IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 20-CV-01236-NC

765328.25

and analyzed extensive information from the City, including the City's policies and practices regarding curb ramp construction, current and historical curb ramp design standards, and GIS curb ramp database. Dardarian Decl. ¶ 5.  Moreover, the curb ramp survey required by the parties' Interim Settlement Agreement produced comprehensive information that the parties shared regarding the presence and condition of curb ramps within the City.  *Id.* ¶ 7.  With that information in hand, the parties were able to negotiate a settlement that will bring the City into compliance with applicable disability access laws on a realistic schedule.  In short, proposed Class Counsel have fully vetted the claims subject to the Consent Decree.

Second, GBDH and CREEC have extensive experience in handling class actions and complex litigation generally, and systemic disability access cases specifically.  GBDH is a plaintiffs' civil rights, employment discrimination, and wage and hour class action law firm specializing in class actions and complex litigation.  Dardarian Decl. ¶ 29.  Led by partner Linda M. Dardarian, GBDH's disability rights practice has enforced compliance with the ADA, Section 504, and state disability rights laws and achieved access for persons with disabilities to the services, privileges and advantages provided by public and private entities nationwide.  *Id.*  GBDH currently serves as class counsel in *Willits v. City of Los Angeles*, No. CV 10-05782 CBM RZX, and *Ochoa v. City of Long Beach*, No. CV 14-04307 DSF FFM, certified class actions alleging that the defendant entities have unlawfully failed to make their pedestrian rights of way, including curb ramps, crosswalks, and sidewalks, accessible to persons with mobility impairments, in violation of Title II of the ADA and Section 504.  *Id.* ¶¶ 35-37.  Both of those matters settled on a class basis with Consent Decrees that provide extensive improvements to the pedestrian rights of way in the cities of Los Angeles and Long Beach, California.  The *Willits* matter in particular is historic in its reach, securing approximately $1.4 billion in improvements to existing pedestrian facilities, as well as unlimited amounts on newly constructed and altered facilities.  *Id.* ¶ 37.  In addition, GBDH and co-counsel CREEC are actively monitoring class action settlements that they reached with the City of Seattle in *Reynoldson v. City of Seattle*, No. CV 15-01608 BJR, which provides for the installation and remediation of 22,500 curb ramps in the Seattle pedestrian right of way at a rate of 1,250 curb ramps each year for an 18-year period; and *Hines v. City of Portland*, No. 3:18-cv-00869-HZ, which requires the City of Portland to install or

765328.25

remediate 1,500 curb ramps per year for a period of 12 years. *Id.* ¶¶ 32-34. A more detailed description of GBDH's experience in handling disability and non-disability class and complex litigation is set forth in the Dardarian declaration. *Id.* ¶¶ 29-45.

CREEC is a non-profit civil rights organization based in Denver, Colorado with offices in Berkeley and Los Angeles, California and Nashville, Tennessee. Declaration of Tim Fox ("Fox Decl.") ¶ 2. CREEC was founded by Tim Fox and Amy Robertson in 2013. *Id.* Mr. Fox and Ms. Robertson had previously been shareholders in the for-profit law firm of Fox & Robertson. *Id.* Fox & Robertson and CREEC have successfully litigated numerous disability rights cases, including more than 15 class actions under state and federal disability rights laws. *Id.* ¶ 3. In addition to *Reynoldson* and *Hines*, described above, CREEC is class counsel in *Denny v. City and County of Denver*, Case Number 2016CV030247 (Denver District Court), which involves alleged widespread violations of curb ramp requirements in Denver. *Id.* ¶ 6. After two years of negotiation, the parties reached a settlement requiring the City to, among other things, conduct a complete survey of Denver street corners and curb ramps, and to bring those corners and curb ramps into compliance with federal law. *Id.* In addition, CREEC is class counsel in *King v. City of Colorado Springs*, No. 1:19-cv-00829-JLK (D. Colo. Oct. 1, 2019), which involved missing and noncompliant curb ramps in Colorado Springs. The parties ultimately reached a settlement requiring the City to construct a minimum of 1,100 compliant curb ramps each year until at least 15,400 curb ramps are constructed. *Id.* ¶ 4.

Third, proposed Class Counsel are highly knowledgeable regarding disability access laws. GBDH and CREEC have years of experience litigating under federal and state disability access laws, and in particular prosecuting claims against government entities pursuant to Title II of the ADA and Section 504. Dardarian Decl. ¶¶ 32-38; Fox Decl. ¶¶ 3-8.

Fourth, proposed Class Counsel have committed significant resources to this matter. Dardarian Decl. ¶ 50; Fox Decl. ¶ 12. Over the past six years, they have pursued this action vigorously on behalf of the Settlement Class without any compensation. Dardarian Decl. ¶ 50; Fox Decl. ¶ 12. The dedication of those resources have produced a Consent Decree that will greatly enhance access to the City's pedestrian right of way for persons with mobility disabilities. Dardarian Decl. ¶ 50; Fox Decl. ¶ 12. Proposed Class Counsel are also committed to implementing the settlement of this action through the duration of the

765328.25

1    Decree.  Dardarian Decl. ¶ 50; Fox Decl. ¶ 12.

2        Finally, proposed Class Counsel have no conflicts of interest with the Settlement Class that affect

3    their ability to fairly and adequately represent the Class.  Dardarian Decl. ¶ 51; Fox Decl. ¶ 11.

4        **7.    The Requirements of Rule 23(b)(2) Are Satisfied.**

5        A class action may be certified under Rule 23(b)(2) where "the party opposing the class has acted

6    or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

7    declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  "[T]he primary

8    role of this provision has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754

9    F.3d 657, 686 (9th Cir. 2014); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  For a

10   class to be certified under Rule 23(b)(2), "it is sufficient if class members complain of a pattern or practice

11   that is generally applicable to the class," even if not all class members have been injured by the challenged

12   practice. *Walters v. Reno*, 145 F. 3d 1032, 1047 (9th Cir. 1988).  The requirements of Rule 23(b)(2) are

13   "almost automatically satisfied in actions primarily seeking injunctive relief." *Neal v. Casey*, 43 F.3d 48,

14   58 (3d Cir. 1994).

15       The claims brought in this case are precisely the type of claims that Rule 23(b)(2) was intended to

16   cover.  Here, Plaintiff seeks broad declaratory and injunctive relief—system-wide improvements in the

17   City's pedestrian rights of way—on behalf of a large class of all City residents and visitors with mobility

18   disabilities who are being denied access due to alleged deficiencies in Defendants' policies and practices.

19   Additionally, the Settlement Class seeks only class-wide injunctive relief to address the alleged

20   deficiencies, and does not seek any damages.

21       Similar cases alleging that state or local governments violated the ADA and/or Section 504 by

22   failing to provide access to the pedestrian right of way for persons with mobility disabilities have been

23   certified for class treatment under Rule 23(b)(2), either through the parties' stipulation or court

24   adjudication. *See Willits et al. v. City of Los Angeles*, No. CV 10-05782 CBM (RZx), 2011 U.S. Dist.

25   LEXIS 155103 (C.D. Cal Jan. 3, 2011); *Californians for Disability Rights, Inc. et al. v. Cal. Dep't of

26   Transp.*, 249 F.R.D. 334 (N.D. Cal. March 13, 2008); *see also* Dardarian Decl., Exs. 5-8 (Order Approving

27   Class Action Settlement, *Hines, et al. v. City of Portland*, No. 3:18-cv-00869-HZ, Dkt. 40 (D. Or. Sept. 27,

28

16

PLS.' MEM. OF POINTS & AUTHORITIES IN SUPPORT OF MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 20-CV-01236-NC

765328.25

2018); Order Granting Stipulated Motion Regarding Class Certification, *Reynoldson, et al. v. City of Seattle,* No. 2:15-cv-01608 (W.D. Wash. May 2, 2016), ECF No. 30; Stipulation and Order Approving Certification of a Class, *Barden, et al. v. City of Sacramento,* No. 2:99-cv-00497-MCE-JFM (E.D. Cal. July 11, 2000), ECF No. 15 Order Granting Class Certification, *Ochoa, et al. v. City of Long Beach,* No. 2:14-cv-04307-DSF-FFM (C.D. Cal. Sept. 15, 2015), ECF No. 90).

In sum, the Settlement Class satisfies Rule 23 and should be certified.  Plaintiff should also be appointed Settlement Class Representative, and Plaintiff's counsel should be appointed Settlement Class Counsel pursuant to Rule 23(g).

**B.**  **The Consent Decree Is Fair, Reasonable, and Adequate, and Should Be Approved.**

Pursuant to Rule 23, a class action may only be settled with court approval.  Fed. R. Civ. P. 23(e). Rule 23(e) makes clear that preliminary approval should be granted only upon a showing that the court will likely approve the settlement as "fair, reasonable, and adequate" under Rule 23(e)(2).  Fed. R. Civ. P. 23(e)(1)(B)(i).  Rule 23(e)(2) requires courts to examine whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other.  These factors support preliminary approval here.

**1.**  **Class Counsel Have Adequately Represented the Settlement Class.**

The first factor assesses whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  As discussed in Section IV.A.5-6, Plaintiff Lashbrook and proposed Class Counsel are adequate representatives because they have no conflicts of interest with the Settlement Class and have vigorously advanced the interests of the Settlement Class throughout nearly six years of structured negotiations that resulted in a settlement that requires an accessible curb ramp at every corner of the City's pedestrian right of way.  *Hanlon*, 150 F.3d at 1020.  Accordingly, this factor weighs in favor of preliminary approval.

**2.**  **The Consent Decree Was Negotiated at Arm's Length.**

The second factor assesses whether the proposed settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  Here, the negotiations were adversarial and at arm's length at all times.  At the outset

765328.25

of the negotiations, the City took the position that Plaintiff's claims were barred by the statute of limitations. The City agreed to negotiate only after Plaintiff provided significant authority demonstrating that his claims are viable. Settlement discussions were then conducted pursuant to a formal agreement that preserved the rights of all parties during the pendency of the negotiations and clearly identified the topics that would be addressed through structured negotiations. The Consent Decree was negotiated over a period of nearly six years and finalized only after the City had performed a comprehensive survey of its curb ramps. This demonstrates that the negotiations were fully informed and not rushed in any way. *See Hanlon*, 150 F.3d at 1027 ("There is no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims.").

Moreover, the Consent Decree withstands the heightened level of scrutiny applicable to pre-certification class action settlements. Class settlements reached prior to formal class certification must be examined for "evidence of collusion or other conflicts of interest." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). The Ninth Circuit has identified three "subtle signs" that may indicate collusion: "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . ; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.*

The mere presence of *Bluetooth* indicia does not foreclose settlement approval. Where "the fee award is clearly reasonable as viewed through the appropriate application of either the lodestar or percentage-of-recovery methods, the chance of collusion narrows to a slim possibility." *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 925 (9th Cir. 2014) (vacated after appeal dismissed). Moreover, "it is sufficient that a district court recognizes and balances potentially collusive provisions … against the other terms of the settlement agreement." *Id.* "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026.

Here, the Consent Decree provides the class with injunctive relief only. The Decree neither creates a settlement fund, nor releases class damages claims. The class wide injunctive relief is substantial, and

765328.25

valued in excess of $130 million.  Accordingly, Class Counsel will not receive a disproportionate amount of any monetary settlement and the amount of attorneys' fees awarded by the Court will have no impact on the relief provided to the Settlement Class.  The first and third *Bluetooth* indicia are not applicable to the present matter.

The second *Bluetooth* indicia—a "clear sailing" provision—is present in the Consent Decree. Although the City has agreed to pay up to $734,627.50 to resolve Plaintiff's claim for reasonable attorneys' fees and costs, there is nothing collusive about this arrangement.  First, the parties did not negotiate attorneys' fees and costs until after all relief issues had been resolved.  Dardarian Decl. ¶ 10.  Thus, there was no opportunity for Class Counsel to "pursu[e] their self-interest to the detriment of the class's interest." *Laguna*, 753 F.3d at 925.  Second, the amount of agreed-upon attorneys' fees and costs are amply justified under the lodestar method.  Plaintiff's reasonable attorneys' fees are supported by detailed, contemporaneous billing records documenting the work performed by Class Counsel on behalf of the Class.  Finally, the Consent Decree represents an outstanding result for the Settlement Class, including extensive injunctive relief valued at over $130 million.  When the clear sailing provision is viewed within the context of the Consent Decree as a whole, it becomes obvious that this provision is not collusive.  Put differently, the substantial benefits of the Consent Decree demonstrate that the interests of Class Counsel did not "infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947.

### 3.    The Consent Decree Represents an Outstanding Result for the Settlement Class.

The third factor assesses whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  "This inquiry focuses on 'substantive fairness and adequacy,' and evaluates 'plaintiffs' expected recovery balanced against the value of the settlement offer.'" *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 53356, at **26-27 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.).

The Consent Decree provides a significant benefit to Settlement Class Members.  Prior to the

1   negotiations, the City had not conducted a comprehensive curb ramp survey and had not satisfied the curb

2   ramp construction goals set forth in its Transition Plan.  Dardarian Decl. ¶ 3.  Moreover, the City

3   constructed or remediated approximately 600 curb ramps per year based on annual expenditures of

4   approximately $1.25 and $1.75 million dollars.  *Id.* ¶ 4.  At the City's previous pace of construction, it

5   would have taken the City approximately 46 years to construct and remediate the 27,621 curb ramps

6   identified as missing or non-compliant through the City's curb ramp survey.  *Id.*

7        In contrast, the Consent Decree requires the City to be fully ramped within 18 years.  It requires the

8   City to construct or remediate 1,944 high priority curb ramps per year between the Decree's effective date

9   and 2030, and 807 low priority curb ramps per year between the years 2031 and 2038.  Consent Decree §

10   5.2.  It also requires the City to appropriate thirteen million dollars ($13 million) each fiscal year for curb

11   ramp construction and remediation until 2030.  *Id.* ¶ 5.1.  Thereafter, the City must allocate a minimum of

12   ten (10) percent of the City's pavement budget toward the construction and remediation of curb ramps until

13   the City fulfills its obligations under the Consent Decree.  *Id.*  The Consent Decree also improves the City's

14   curb ramp request system, requiring enhanced notice to requestors and reducing wait time for curb ramp

15   fulfillment from approximately one year to 120 days.  *Id.* ¶ 11.4.  Class Counsel are confident that the curb

16   ramp work required by the Consent Decree is sufficient to provide for a system of curb ramps that, when

17   viewed in its entirety, will be readily accessible to persons with mobility disabilities.  Dardarian Decl. ¶ 11;

18   Fox Decl. ¶ 13.  This is an excellent result for the Settlement Class, and it is unlikely that a court would

19   order greater relief.  *Id.*  The Consent Decree provides Plaintiff and the Settlement Class full relief for the

20   class' claims.  Dardarian Decl. ¶ 12.

21        The adequacy of the relief obtained through settlement is further supported by the potential costs,

22   risks, and delay of trial and appeal.  *See, e.g.*, *Castaneda v. Burger King*, No. C 08-04262 WHA 2010 WL

23   2735091, at *3 (N.D. Cal. July 12, 2010); *Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*,

24   No. C 06-5125 SBA, 2010 U.S. Dist. LEXIS 62837, at *11 (N.D. Cal. June 2, 2010) ("The settlement

25   affords significant and immediate relief that may never have materialized had the trial concluded.").

26   Litigation and trial of this matter would require the expenditure of significant resources by the parties and

27   the Court, including time and costs spent on fact and expert discovery, further analysis of data, and

28

765328.25

depositions of Class Members, City employees, and experts.  Dardarian Decl. ¶ 54.  For example, in *Ochoa v. City of Long Beach*, Case No.: 2:14-cv-04307-DSF (FFMx) (C.D. Cal.),[4] a settlement was reached only after two-and-a-half years of contested litigation, including extensive discovery and motion practice.  *Id*.  The parties propounded and responded to hundreds of discovery requests, exchanged over 30,000 pages of documents, and conducted twenty-four depositions.  *Id*.  Similarly, in *Willits v. City of Los Angeles*, Case No. CV 10-05782 CBM (C.D. Cal.), the parties engaged in several years of extremely contentious litigation that involved proceedings in state and federal court at the trial and appellate court levels.  *Id*.  Before reaching a settlement, the parties propounded and responded to hundreds of discovery requests, exchanged over 4 million pages of documents, and conducted thirty-four depositions.  *Id*.  Litigation of this matter would be similarly protracted and costly.

The method of providing relief to the Settlement Class is also fair, reasonable, and adequate.  As discussed above, curb ramp construction and remediation will be prioritized so that the most severe curb ramp barriers will be removed first.  All High Priority Curb Ramp Barriers will be addressed by 2030.  Less severe curb ramp barriers will be addressed by 2038.  Also, all program access improvements will be performed in a way that gives preference to curb ramps that serve areas prioritized in 28 C.F.R. § 35.150 (*i.e.* government offices and facilities, transportation corridors, hospitals, areas of employment, and finally residential areas).

Finally, the parties' agreement regarding attorneys' fees supports adequacy.  The City has agreed not to oppose Plaintiff's modest request of $734,627.50 in reasonable attorneys' fees, expenses, and costs.  Plaintiff will file a motion demonstrating the reasonableness of the requested attorneys' fees pursuant to the "lodestar" method, which is the appropriate method for determining attorneys' fees in civil rights cases.  *Muniz v. UPS*, 738 F.3d 214, 222 (9th Cir. 2013).  Moreover, Plaintiff intends to file this motion thirty-five (35) days prior to the objection deadline so that Settlement Class Members will have ample opportunity to review Plaintiff's request for attorneys' fees, expenses, and costs.

Thus, the adequacy of the relief supports preliminary approval.[5]

---

[4] GBDH served as class counsel in both the *Ochoa* and *Willits* matters.

[5] The final factor set forth in Rule 23(e)(2)(C) is not applicable here as all agreements made by the parties are set forth in the Consent Decree.

21

Pls.' Mem. of Points & Authorities in Support of Mot. for Prelim. Approval of Class Action Settlement
Case No. 20-CV-01236-NC

765328.25

**4.** **The Consent Decree Treats Class Members Equitably Relative to Each Other.**

The Consent Decree does not provide preferential treatment to any subset of the Settlement Class. All Settlement Class Members will share equally in the City-wide removal of curb ramp barriers.  Once a particular curb ramp barrier is removed, Settlement Class Members will benefit equally from the improved access at that location.  In addition, all Settlement Class Members will have an equal opportunity to avail themselves of the improved curb ramp request system.

Plaintiff Lashbrook's proposed service award and damages payment do not make the Consent Decree inequitable.  In the Ninth Circuit, service awards are routinely awarded and do not render class action settlements unfair.  *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003).  Moreover, $5,000 service awards are considered "presumptively reasonable" in the Northern District of California.  *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014).  Similarly, there is nothing unfair about Plaintiff's $50,000 individual payment.  The Consent Decree does not release damages claims for Settlement Class Members, and thus they may still pursue such claims against the City.  Moreover, large disparities in the amount of damage awards between the named an unnamed class members are reasonable if justified by the record.  *Staton,* 327 F.3d at 978; *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 53356, at *36 (N.D. Cal. March 28, 2019).  Here, Plaintiff Lashbrook encountered thousands of curb ramp barriers in the City, and was thrown out of his wheelchair and left lying in the street on three occasions while descending non-compliant curb ramps.  Lashbrook Decl. ¶ 8.

In sum, all relevant factors set forth in Rule 23(e)(2) support approval of the Consent Decree, and Plaintiffs have shown that they are likely to obtain final approval of the proposed settlement.

**C.** **The Proposed Notice Satisfies Due Process and Should Be Approved.**

Under Rule 23(e)(1), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal" if justified by the parties' showing.  Due process requires that interested parties be provided with notice reasonably calculated under the circumstances to apprise them of the pendency of the action and afford them an opportunity to present their objections.  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Notice is satisfactory "if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

765328.25

1   forward and be heard.'" *Churchill Vill, LLC v. GE.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v.*

2   *United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Additionally, notice must be reasonably calculated to

3   reach interested parties. *Mullane*, 339 U.S. at 318.

4        The notice standard is satisfied here. Within thirty (30) days after issuance of the Preliminary

5   Approval Order, the City will cause notice of the settlement to be published once each week for four (4)

6   consecutive weeks in The San Jose Mercury News, a paper of general circulation. Consent Decree § 15.4.

7   Such Notice will include: (i) a brief statement describing this action, the settlement embodied in the

8   Consent Decree, and the claims released by the Settlement Class; (ii) the date and time of the Fairness

9   Hearing and/or Final Approval Hearing of the proposed Consent Decree; (iii) the deadline for submitting

10  objections to the proposed Consent Decree; and (iv) the web page, address, and telephone and fax numbers

11  that may be used to obtain a copy of the Notice of Settlement (substantially in the form attached to the

12  Consent Decree as Exhibit B). *Id.*

13       Within twenty (20) days after the issuance of the Preliminary Approval Order, GBDH and CREEC

14  will post on their websites a copy of the Notice of Settlement in English, Spanish, and Vietnamese, and in

15  an accessible electronic format that can be recognized and read by software commonly used by individuals

16  with visual impairments to read web pages. *Id.* The City will likewise post a copy of the Notice of

17  Settlement on the City's official website (www.sanjoseca.gov) for four consecutive weeks and will make

18  the notice available in English, Spanish, and Vietnamese. *Id.*

19       Within ten (10) days after the issuance of the Preliminary Approval Order, Class Counsel will cause

20  a copy of the Notice of Settlement to be provided to a list of organizations that serve individuals with

21  mobility disabilities. *Id.* The list of organizations is Exhibit E to the Consent Decree.

22       The parties have developed this proposed plan for distribution of the Notice taking into account the

23  breadth and magnitude of the Settlement Class. Distribution of the Notice through publication in a local

24  newspaper and posting on multiple accessible websites, coupled with facilitating the direct mailing or

25  emailing of the notice to organizations that serve Settlement Class Members, will ensure that the notice

26  reaches the maximum number of members of the Settlement Class in the most efficient and cost-effective

27  manner. The proposed form of Notice and the proposed distribution plan will fairly apprise members of the

28

765328.25

Settlement Class of the settlement and their options with respect thereto, and fully satisfy due process requirements for a Rule 23(b)(2) settlement class with no opt-out rights.  The Court should approve the proposed Notice and direct that it be distributed.

**D.** **The Court Should Approve the Proposed Scheduling Order, Including Setting a Date for the Fairness Hearing.**

Once a court grants preliminary approval and notice is provided, the court conducts a "fairness hearing," at which all interested parties have an opportunity to be heard.  At such a hearing, the court conducts a substantive evaluation of the proposed settlement to determine whether it is "fundamentally fair, adequate, and reasonable."  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The parties propose the following schedule:

| Case Event | Date |
| --- | --- |
| Plaintiff Distributes Notice to Organizations | Within 10 days after entry of order granting preliminary approval |
| City and Plaintiff's Counsel Post Notices on Website | Within 20 days after entry of order granting preliminary approval |
| City Causes Publication of Settlement Notice in The San Jose Mercury News | Within 30 days after entry of order granting preliminary approval |
| Deadline for Plaintiff to file Motions for Attorneys' Fees, Expenses, and Costs, and for Service Award to Plaintiff Lashbrook | 35 days prior to Deadline for Objections |
| Deadline for Objections by Class Members | Within 45 calendar days after initial publication of Settlement Notice |
| Deadline for Class Counsel and/or the City to respond to any timely-filed objections | 5 days before Fairness Hearing |
| Fairness Hearing | To be determined by the Court |
| Final Approval | To be determined by the Court |

## V.     CONCLUSION

For the foregoing reasons, the parties respectfully request that this Court: (1) certify the proposed Settlement Class and appoint Plaintiff Lashbrook and his counsel as proper representatives of the Settlement Class; (2) grant preliminary approval of the Consent Decree; (3) approve and direct the publication of the class notice proposed by the Parties; and (4) schedule a fairness hearing for final approval of the Consent Decree.

765328.25

Dated:  April 21, 2020                    Respectfully submitted,

                                          GOLDSTEIN, BORGEN, DARDARIAN & HO

                                          */s/ Andrew P. Lee*
                                          Andrew P. Lee

                                          *Attorneys for Plaintiff and the proposed Settlement Class*

Dated:  April 21, 2020                    THE CITY OF SAN JOSE

                                          */s/ Nora V. Frimann*
                                          Nora V. Frimann

                                          *Attorneys for the City of San Jose*

## **SIGNATURE ATTESTATION**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatory on this e-filed document.

Dated: April 21, 2020                    */s/ Andrew P. Lee*
                                          Andrew P. Lee

765328.25