1  Linda M. Dardarian (SBN 131001)
   ldardarian@gbdhlegal.com
2  Andrew P. Lee (SBN 245903)
   alee@gbdhlegal.com
3  Beth Holtzman (SBN 316400)
   bholtzman@gbdhlegal.com
4  GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
5  Oakland, CA 94612
   Tel:  (510) 763-9800
6  Fax:  (510) 835-1417

7  Timothy P. Fox (SBN 157750)
   tfox@creeclaw.org
8  CIVIL RIGHTS EDUCATION AND
     ENFORCEMENT CENTER
9  1245 E. Colfax Avenue, Suite 400
   Denver, CO 80218
10 Tel:  (303) 757-7901

11 *Attorneys for Plaintiff and the Settlement Class*

12                **UNITED STATES DISTRICT COURT**

13               **NORTHERN DISTRICT OF CALIFORNIA**

14                      **SAN JOSE DIVISION**

15 ARTIE LASHBROOK, on behalf of himself and all
   others similarly situated,                          | **CLASS ACTION**
16
                                                        | Case No.: 5:20-cv-01236-NC
17          Plaintiff,
                                                        | **NOTICE OF JOINT MOTION AND JOINT**
18 vs.                                                  | **MOTION FOR FINAL APPROVAL OF**
                                                        | **CLASS ACTION SETTLEMENT;**
19 CITY OF SAN JOSE,                                    | **MEMORANDUM OF POINTS AND**
                                                        | **AUTHORITIES IN SUPPORT THEREOF**
20          Defendant.
                                                        | Date:    September 2, 2020
21                                                      | Time:    1:00 p.m.
                                                        | Dept:    Courtroom 5
22                                                      | Before:  Hon. Nathanael Cousins

23

24

25

26

27

28

788865.13

# TABLE OF CONTENTS

Page

NOTICE OF JOINT MOTION AND JOINT MOTION .................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.  INTRODUCTION ................................................................................................ 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ....................... 2

    A.  Negotiation of Consent Decree and Filing of Complaint .............................. 2

    B.  Preliminary Approval .................................................................................... 3

    C.  Notice to the Class ........................................................................................ 4

III. ARGUMENT ........................................................................................................ 5

    A.  The Consent Decree Is Fair and Reasonable and Should be Finally Approved. ............ 5

        1.  The Legal Standard for Final Approval ............................................... 5

        2.  The Relevant Rule 23(e)(2) Factors Weigh Strongly in Favor of Final Approval. ............ 7

            a.  The Class Representative and Class Counsel Have Adequately Represented the Class. ............ 7

            b.  The Consent Decree Was Negotiated at Arm's Length. ....................... 7

            c.  The Consent Decree Provides Extensive Injunctive Relief and Represents an Outstanding Result for the Settlement Class. ............ 9

            d.  The Consent Decree Treats Class Members Equitably Relative to Each Other. ............ 12

        3.  The Remaining *Churchill/Hanlon* Factors Also Weigh Strongly in Favor of Final Approval. ............ 13

            a.  The Extent of Discovery Completed and the Stage of the Proceedings ............ 13

            b.  The Experience and Views of Counsel ............................................... 14

            c.  The Presence of a Governmental Participant ....................................... 15

            d.  The Reaction of Settlement Class Members to the Proposed Consent Decree ............ 15

i

NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 5:20-CV-0136-NC

788865.13

1

B.      The Proposed Service Award Should Be Approved. ..................................................... 16

C.      Plaintiff's Motion for Reasonable Attorneys' Fees, Costs and Expenses Should
        Be Approved. ............................................................................................................. 16

IV.     CONCLUSION ...................................................................................................................... 17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

788865.13

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Federal Cases**

5      *In re Animation Workers Antitrust Litig.*,
           No. 5:14-cv-04062-LHK, 2016 WL 6841655 (N.D. Cal. Nov. 11, 2016) ................................... 15
6
       *In re Anthem, Inc. Data Breach Litig.*,
7          327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................... 15, 16

8      *In re Bluetooth Headset Prods. Liab. Litig.*,
           654 F.3d 935 (9th Cir. 2011) ........................................................................ 6, 7, 8, 9
9
       *Brown v. Hain Celestial Grp., Inc.*,
10         No. 3:11-cv-03082-LB, 2016 U.S. Dist. LEXIS 19275 (N.D. Cal. Feb. 17, 2016) ...................... 15

11     *Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*,
           No. C 06-5125 SBA, 2010 U.S. Dist. LEXIS 62837 (N.D. Cal. June 2, 2010) ........................... 10
12
       *Castaneda v. Burger King*,
13         No. C 08-04262 WHA, 2010 WL 2735091 (N.D. Cal. July 12, 2010) ....................................... 10

14
       *Churchill Vill., L.L.C. v. Gen. Elec.*,
15         361 F.3d 566 (9th Cir. 2004) ........................................................................ 6, 14, 15

16     *Dyer v. Wells Fargo Bank, N.A.*,
           303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................. 13
17
       *Hanlon v. Chrysler Corp.*,
18         150 F.3d 1011 (9th Cir. 1998) ........................................................................ *passim*

19
       *In re Hyundai and Kia Fuel Econ. Litig.*,
20         926 F.3d 539 (9th Cir. 2019) ............................................................................... 5, 7

21     *Johnson v. Shaffer*,
           No. 2:12-cv-1059-KJM-ACP, 2016 WL 3027744 (E.D. Cal. May 27, 2016) .............................. 15
22
       *Koller v. Med Foods, Inc.*,
23         No. 3:14-CV-2400-RS, 2018 U.S. Dist. LEXIS 231901 (N.D. Cal. Aug. 29, 2018).................... 15

24
       *Laguna v. Coverall N. Am., Inc.*,
25         753 F.3d 918 (9th Cir. 2014) ............................................................................... 8, 9

26     *Lane v. Facebook, Inc.*,
           696 F.3d 811 (9th Cir. 2012) ................................................................................... 6
27

28

i

NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 5:20-CV-0136-NC

788865.13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................. 13

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ................................................................. 15

*Muniz v. UPS*,
    738 F.3d 214 (9th Cir. 2013) ................................................................... 12

*In re MyFord Touch Consumer Litig.*,
    No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019) ................. 9, 13

*Nat'l Rural Telecomms. Coop.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 16

*Officers for Justice v. Civ. Serv. Comm'n of City and County of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ................................................................. 5, 6

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................. 6, 13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................. 12, 13

*In re Toys "R" Us- Del., Inc.- Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) .............................................................. 6, 14

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09-00261 SBA (EMC), 2012 U.S. Dist. LEXIS 116704
    (N.D. Cal. Nov. 21, 2012) ..................................................................... 13

**Rules**

Fed. R. Civ. P.
    23 .......................................................................................... 1, 2
    23(a) ......................................................................................... 3
    23(b)(2) ...................................................................................... 3
    23(e) ......................................................................................... 5
    23(e)(2) .................................................................................... 5, 7
    23(e)(2)(B) ................................................................................... 7
    23(e)(2)(C) ............................................................................... 9, 12
    23(e)(3) ...................................................................................... 9

ii

NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 5:20-CV-0136-NC

1

**Regulations**

2

28 C.F.R.

3
§ 35.150 ............................................................................................................ 11

§ 35.150(a) ........................................................................................................ 10

4
§ 35.151(a) ........................................................................................................ 10

§ 35.151(a)(2) .................................................................................................... 10

5
§ 35.151(b) ........................................................................................................ 10

§ 35.151(b)(2) .................................................................................................... 10

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 5:20-CV-0136-NC

788865.13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF JOINT MOTION AND JOINT MOTION

PLEASE TAKE NOTICE that on September 2, 2020 at 1:00 p.m., in the Courtroom of the Honorable Nathanael Cousins, Magistrate Judge for the Northern District of California, located at 280 South 1st Street, San Jose, California, Plaintiff Artie Lashbrook and Defendant City of San Jose will and hereby do jointly move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order granting final approval of the Parties' proposed Consent Decree and the exhibits attached thereto.  This motion is based on this Notice of Joint Motion and Joint Motion, the Memorandum of Points and Authorities, the Consent Decree, including all exhibits thereto, the accompanying Declarations of Linda M. Dardarian, Stuart Kirkpatrick, and Elisa Tolentino, the argument of counsel, all papers and records on file in this case, and such other matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff Artie Lashbrook and Defendant City of San Jose (the "City") request final approval of a class action settlement that will transform the City's pedestrian right of way through the construction and remediation of 27,621 curb ramps on City streets over the next 18 years.  Under the terms of the proposed Consent Decree, the City will remediate all missing and non-complaint curb ramps within the City's pedestrian right of way by 2038, thereby providing all of the relief sought in Plaintiff's Complaint.

This Court preliminarily approved the proposed settlement on May 27, 2020.  Since then, the Parties have caused Notice of the Settlement to issue in conformance with this Court's Order Granting Preliminary Approval.  *See* Declaration of Linda M. Dardarian in Support of Joint Motion for Final Approval of Class Action Settlement, and Statement of Compliance with Notice Requirements ("Dardarian Decl.") ¶¶ 10-13; Declaration of Stuart Kirkpatrick in Support of Joint Motion for Final Approval of Class Action Settlement, and Statement of Compliance with Notice Requirements ("Kirkpatrick Decl.") ¶¶ 3-5; Declaration of Elisa Tolentino in Support of Joint Motion for Final Approval, and Statement of Compliance with Notice Requirements ("Tolentino Decl.") ¶¶ 2-7.  The

788865.13

1  deadline for objecting to the proposed Settlement was August 14, 2020.  No class members submitted

2  objections.  Dardarian Decl. ¶ 14.

3      The proposed Settlement is fair, adequate, and reasonable, and satisfies all of the criteria for

4  final approval under Rule 23 of the Federal Rules of Civil Procedure.  Implementation of the Consent

5  Decree will result in widespread improvement to the accessibility of the City's pedestrian

6  infrastructure, resulting in a fully ramped pedestrian right of way that will benefit of all San Jose

7  residents and visitors.  Its benefits far outweigh the risks of litigation to both the Plaintiff and the City.

8  Accordingly, the Parties jointly request that the Court: (i) grant final approval of the Settlement; and

9  (ii) retain jurisdiction over the Consent Decree and the Parties throughout the Consent Decree's Term.[1]

10  ## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

11  ### A.    Negotiation of Consent Decree and Filing of Complaint

12      The Parties negotiated the proposed settlement over a six-year period beginning in February

13  2014.  Dardarian Decl. ¶ 4.  Over the first two and half years of negotiation, the Parties exchanged

14  information regarding the status of existing curb ramps in the City's pedestrian right of way, the City's

15  past and present policies concerning curb ramp construction and remediation, the legal obligations

16  created by disability non-discrimination laws, and the parties' settlement positions.  *Id.*

17      In November 2016, the Parties finalized an Interim Settlement Agreement that set forth certain

18  preliminary obligations while they continued to negotiate a full resolution of Plaintiff's claims.  *Id.* ¶ 5.

19  The Interim Settlement Agreement required the City to perform a complete survey of the City's curb

20  ramps to identify all locations that were missing curb ramps and assess existing curb ramps for

21  compliance with applicable federal and state accessibility standards.  *Id.*  The Interim Settlement

22  Agreement also required the City to construct approximately 2,700 curb ramps over a two-year period

23  and resolve curb ramp requests within one-hundred twenty (120) days of submission.  *Id.*

24      The City completed its curb ramp survey in April 2018.  Dardarian Decl. ¶ 6.  It revealed that

25  there were 22,885 existing curb ramps within the City.  *Id.*  20,849 curb ramps, or 91% of all curb

---

[1] By separate motions filed on July 10, 2020, Plaintiff also asks the Court to (i) grant a service award of $5,000 to the Named Plaintiff and Class Representative; and (ii) award Class Counsel reasonable attorneys' fees, costs, and expenses in the amount of $725,253.09.

788865.13

ramps within the City, were non-compliant with applicable disability access standards set forth in the 2010 Americans with Disabilities Act Access Standards ("2010 ADAS") or Title 24 of the California Building Code ("Title 24" or "CBC").  *Id.*  The survey found that 6,772 curb ramps were missing from locations where they are required, and 14,611 existing non-compliant curb ramps contained "High Priority Curb Ramps Barriers." [2]  *Id.*  Another 6,238 curb ramps did not comply with federal and state accessibility standards but were not defined as "High Priority Curb Ramps Barriers."  *Id.*

With the survey completed, the Parties proceeded to negotiate the Consent Decree that is presently before the Court for final approval.  Dardarian Decl. ¶ 7.  As a result of the Parties' robust negotiations and cooperative information sharing, the Parties reached a settlement agreement, the terms of which are set forth in the Consent Decree.  A true and correct copy of the Consent Decree is attached as Exhibit 2 to the Declaration of Linda M. Dardarian in Support of Joint Motion for Preliminary Approval of Class Action Settlement, ECF No. 10-1.

On February 19, 2020, Plaintiff Artie Lashbrook filed this class action, asserting claims for injunctive relief against the City of San Jose based on alleged violations of the ADA, the Rehabilitation Act of 1973, California Government Code Section 11135, and the California Disabled Persons Act (California Civil Code Sections 54, *et seq.*).  *See* Complaint, ECF No. 1.[3]

**B.   Preliminary Approval**

On May 27, 2020, this Court granted preliminary approval of the proposed Settlement.  *See* (ECF No. 14) ("Preliminary Approval Order").  In its Preliminary Approval Order, the Court certified the following Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2):

---

[2] "High Priority Curb Ramps Barriers" include the following: 1) locations that are missing curb ramps (missing curb ramps are in addition to the 14,611 existing non-compliant High Priority Curb Ramps); 2) curb ramps with less than 32 inches clear width; 3) curb ramps with running slopes exceeding 10%; 4) curb ramps with cross slopes exceeding 4%; 5) curb ramps with non-flush transitions; 6) curb ramps with counter slopes exceeding 10%; 7) curb ramps with side flare slopes exceeding 12.5%; 8) curb ramps with side flare slopes exceeding 10% where top landings are not provided; 9) curb ramps with gaps or vertical edges greater than 1 inch; 10) parallel curb ramps with bottom landings that have slopes exceeding 4%; 11) parallel curb ramps with top landings that have slopes exceeding 4%; 12) parallel curb ramps with top landings that have running slopes exceeding 10%; and, 13) curb ramps with a combination of non-compliant running slopes, counter slopes, and non-flush transitions.

[3] A full description of the facts and history are set forth in Plaintiff's Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses filed on July 10, 2020.  ECF No. 21.

3

788865.13

1

2     All persons (including residents of and/or visitors to the City of San Jose)
      with any Mobility Disability, who, at any time prior to the Court granting
3     final approval of the Consent Decree, have been denied full and equal
      access to the City's pedestrian right of way due to the lack of a curb ramp
      or a curb ramp that was damaged, in need of repair, or otherwise in a
4     condition not suitable or sufficient for use.

5    *Id.* at ¶ 1.  This Court appointed Artie Lashbrook as the Class Representative and Plaintiff's Counsel as

6    Class Counsel.  *Id.* at ¶ 1.  The Court also directed notice to the Settlement Class and set a date for the

7    fairness hearing.  *Id.* at ¶¶ 5-6.

8    **C.    Notice to the Class**

9          After preliminary approval, the Parties effected notice pursuant to this Court's Preliminary

10   Approval Order.  Dardarian Decl. ¶¶ 10-13; Kirkpatrick Decl. ¶¶ 3-5; Tolentino Decl. ¶¶ 2-7.

11         The Court-approved Notice of Settlement explained the litigation and the terms of the Consent

12   Decree, including the injunctive relief, release of claims, and amounts requested for the Named

13   Plaintiff/Class Representative's service award and Class Counsel's attorneys' fees, costs, and

14   expenses.  The Notice also informed Class Members how to object to the Settlement and provided a

15   toll-free number for Class Members to obtain further information about the Settlement or Settlement

16   documents.  Class Members had until August 14, 2020 to object to the Settlement.  *See* Preliminary

17   Approval Order, ECF No. 14 ¶ 7.

18         On June 8, 2020, Class Counsel provided a copy of the Notice of Settlement to thirty-three

19   organizations that serve individuals with Mobility Disabilities.  Dardarian Decl. ¶ 11; Kirkpatrick Decl.

20   ¶ 4.  The organizations were identified on a list that was filed as Exhibit E to the Consent Decree.  ECF

21   No. 10-1.  Thirty organizations confirmed receipt of the Notice.  Kirkpatrick Decl. ¶ 5.  None of the

22   emails to the three organizations who did not confirm receipt were returned as undeliverable, which

23   indicates that the Notice was received.  Kirkpatrick Decl. ¶ 5.

24         On June 16, 2020, Class Counsel posted on its website a copy of the Notice of Settlement in

25   English, Spanish, and Vietnamese, and in an accessible electronic format that can be recognized and

26   read by software commonly used by individuals with visual impairments to read web wages.

27   Dardarian Decl. ¶ 12.  On June 17, 2020, the City posted the Notice of Settlement in English, Spanish,

28

4

788865.13

and Vietnamese on the City's official website.  Tolentino Decl. ¶ 6.  On June 30, 2020, and once each week for four consecutive weeks, the City published the Notice of Settlement in the San Jose Mercury News.  *Id.* ¶ 5.  The Notice of Settlement was therefore published, posted or mailed by the deadlines set forth in the Consent Decree and the Court's Preliminary Approval Order.[4]  As of the date of this filing, the Parties have received no objections to the Settlement.  Dardarian Decl. ¶ 14.

## III.   ARGUMENT

**A.   The Consent Decree Is Fair and Reasonable and Should be Finally Approved.**

### 1.   The Legal Standard for Final Approval

The law favors the settlement of class actions.  *See, e.g., In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc).  "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants, and their strategies, positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal citations and quotations omitted).

To grant final approval of a class action settlement, "Fed. R. Civ. P. 23(e) requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon,* 150 F.3d at 1026; *see also*, *Officers for Justice v. Civ. Serv. Comm'n of City and County of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that the "universally applied standard" is whether the settlement is "fundamentally fair, adequate, and reasonable").  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026.

Rule 23(e)(2) states as follows:

> the court may approve [a settlement]… only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to

[4] Notice in the San Jose Mercury News was disseminated pursuant to the Parties Stipulation (ECF No. 19).

5

NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 5:20-CV-0136-NC

788865.13

1   be identified under Rule 23(e)(3); and (D) the proposal treats class members
2   equitably relative to each other.

3   Under well-settled Ninth Circuit precedent, in order to assess a class action settlement, courts

must balance several similar factors, including the following "*Hanlon* factors":

[t]he strength of plaintiffs' case; the risk, expense, complexity, and likely
duration of further litigation; the risk of maintaining class action status
throughout the trial; the amount offered in settlement; the extent of discovery
completed and the stage of the proceedings; the experience and views of counsel;
the presence of a governmental participant; and the reaction of the class
members to the proposed settlement.

8   *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026).  These

same factors are also sometimes referred to as the eight "*Churchill* factors."  *See, e.g., In re Bluetooth*

*Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen.*

*Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

To satisfy appellate review, the Court must demonstrate comprehensive consideration of all

factors.  However, in conducting this analysis, the Ninth Circuit has noted that "'it is the very

uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce

consensual settlements.'"  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting

*Officers for Justice*, 688 F.2d at 625).  Accordingly, when determining whether to grant final approval,

the Court's role in reviewing "what is otherwise a private consensual agreement negotiated between

the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the

agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties,

and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers*

*for Justice*, 688 F.2d at 625; *see also In re Toys "R" Us- Del., Inc.- Fair & Accurate Credit*

*Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014).

For several reasons, the proposed Settlement clearly meets the requirements for final approval.

6

Notice of Joint Motion and Joint Motion for Final Approval of Class Action Settlement; Memorandum of
Points and Authorities in Support Thereof - Case No. 5:20-CV-0136-NC

788865.13

2. **The Relevant Rule 23(e)(2) Factors Weigh Strongly in Favor of Final Approval.**

    a. **The Class Representative and Class Counsel Have Adequately Represented the Class.**

As this Court has previously found when it certified the Settlement Class and preliminarily approved the Settlement, the Class Representative and Class Counsel have adequately represented the Class. ECF No. 14. As demonstrated by the declarations supporting Plaintiff's Motion for Service Award and Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses, Class Representative Lashbrook and Class Counsel are adequate representatives because they have no conflicts of interest with the Settlement Class and have vigorously advanced the interests of the Settlement Class throughout nearly six years of structured negotiations that resulted in a settlement that requires an accessible curb ramp at every corner of the City's pedestrian right of way. ECF No. 10-3 and ECF Nos. 21-1, 21-2. This factor supports final approval of the proposed Settlement.

    b. **The Consent Decree Was Negotiated at Arm's Length.**

The second factor assesses whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). *In re Hyundai and Kia*, 926 F.3d at 570 ("'[W]e put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.'") (quoting *Rodriguez,* 563 F.3d at 965).

Here, the negotiations were adversarial and at an arm's length at all times. Settlement discussions were conducted pursuant to a formal agreement that preserved the rights of all parties during the pendency of the negotiations and clearly identified the topics that would be addressed through the structured negotiations. The Consent Decree was negotiated over a period of nearly six years and finalized only after the City had performed a comprehensive survey of its curb ramps. This demonstrates that the negotiations were fully informed and not rushed in any way. The Parties did not negotiate attorneys' fees and costs until after all injunctive relief issues had been resolved.

Moreover, the Consent Decree withstands the heightened level of scrutiny applicable to pre-certification class action settlements. Class settlements reached prior to formal class certification must be examined for "evidence of collusion or other conflicts of interest." *In re Bluetooth Headset Prods.*

7

NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 5:20-CV-0136-NC

788865.13

1   *Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).  The Ninth Circuit has identified three "subtle

2   signs" that may indicate collusion: "(1) when counsel receive a disproportionate distribution of the

3   settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

4   (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys'

5   fees separate and apart from class funds ...; and (3) when the parties arrange for fees not awarded to

6   revert to defendants rather than be added to the class fund."  *Id.*

7        The mere presence of *Bluetooth* indicia does not foreclose settlement approval.  Where "the fee

8   award is clearly reasonable as viewed through the appropriate application of either the lodestar or

9   percentage-of-recovery methods, the chance of collusion narrows to a slim possibility."  *Laguna v.*

10  *Coverall N. Am., Inc.*, 753 F.3d 918, 925 (9th Cir. 2014) (vacated after appeal dismissed).  Moreover,

11  "it is sufficient that a district court recognizes and balances potentially collusive provisions … against

12  the other terms of the settlement agreement."  *Id.*  "It is the settlement taken as a whole, rather than the

13  individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026.

14       Here, the Consent Decree provides the class with injunctive relief only.  The Decree neither

15  creates a settlement fund, nor releases class damages claims.  The class wide injunctive relief is

16  substantial, and valued in excess of $130 million.  Accordingly, Class Counsel will not receive a

17  disproportionate amount of any monetary settlement and the amount of attorneys' fees and costs

18  awarded by the Court will have no impact on the relief provided to the Settlement Class.  The first and

19  third *Bluetooth* indicia are not applicable to the present matter.

20       The second *Bluetooth* indicia—a "clear sailing" provision providing for the payment of

21  attorneys' fees separate and apart from class funds—is arguably present in the Consent Decree.  The

22  City has agreed to pay up to $734,627.50 to resolve Plaintiff's claim for reasonable attorneys' fees,

23  expenses, and costs.  However, the proposed Settlement does not create a class fund, and therefore

24  attorneys' fees must be awarded separate and apart from the class relief.  Moreover, there is nothing

25  collusive about this arrangement.  First, the Parties did not negotiate attorneys' fees, expenses, and

26  costs until after all other relief issues had been resolved.  Dardarian Decl. ¶ 8.  Thus, there was no

27  opportunity for Class Counsel to "pursu[e] their self-interest to the detriment of the class's interest."

28

788865.13

1   *Laguna*, 753 F.3d at 925.  Second, as demonstrated in Plaintiff's Motion for Award of Reasonable

2   Attorneys' Fees, Costs, and Expenses, the amount of agreed-upon attorneys' fees and costs are amply

3   justified under the lodestar method.  *See* ECF No. 20.  Plaintiff's reasonable attorneys' fees are

4   supported by detailed, contemporaneous billing records documenting the work performed by Class

5   Counsel on behalf of the Class.  ECF Nos. 21-1 & 21-2 (Declarations of Linda M. Dardarian and Tim

6   P. Fox in Support of Plaintiff's Motion for an Award of Reasonable Attorneys' Fees, Costs, and

7   Expenses).  Finally, the Consent Decree represents an outstanding result for the Settlement Class,

8   including extensive injunctive relief valued at over $130 million.  When the clear sailing provision is

9   viewed within the context of the Consent Decree as a whole, it becomes obvious that this provision is

10  not collusive.  Put differently, the substantial benefits of the Consent Decree demonstrate that the

11  interests of Class Counsel did not "infect the negotiations."  *In re Bluetooth Headset Prods. Liab.*

12  *Litig.*, 654 F.3d at 947.

13      The arm's-length negotiations and absence of collusion supports final approval of the proposed

14  Settlement.

15          **c.      The Consent Decree Provides Extensive Injunctive Relief and Represents**

16          **an Outstanding Result for the Settlement Class.**

17      The third factor assesses whether "the relief provided for the class is adequate, taking into

18  account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method

19  of distributing relief to the class, including the method of processing class-member claims; (iii) the

20  terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement

21  required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  "This inquiry focuses on

22  'substantive fairness and adequacy,' and evaluates 'plaintiffs' expected recovery balanced against the

23  value of the settlement offer.'"  *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019

24  U.S. Dist. LEXIS 53356, at **26-27 (N.D. Cal. Mar. 28, 2019) (citing *In re Tableware Antitrust Litig.*,

25  484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

26      The injunctive relief guaranteed by the Settlement constitutes an excellent result for the

27  Settlement Class.  The Consent Decree requires the City to remediate all missing and non-compliant

28

788865.13

curb ramps by 2038, which means the City will be fully ramped within 18 years.  It requires the City to construct 6,772 missing curb ramps and remediate 14,711 High Priority curb ramps by the end of 2030.  Consent Decree § 4.1, 4.2.  The remaining 6,238 non-compliant curb ramps that are not High Priority will be remediated by 2038 (collectively "Curb Ramp Construction Commitment").  Consent Decree § 4.3.  On average, the City will construct or remediate 1,944 High Priority curb ramps per year (more than three times the average rate of construction before the parties commenced negotiations) between the effective date and 2030, and 807 Low Priority curb ramps per year between the years 2031 and 2038.  Consent Decree § 5.2.  All curb ramp construction and remediation will be performed in compliance with federal and state disability access standards,[5] and will count towards the Curb Ramp Construction Commitment.  *See* 28 C.F.R. §§ 35.150(a), 35.151(a), (b).

In order to ensure that the City meets the Curb Ramp Construction Commitment, the Consent Decree also requires the City to appropriate thirteen million dollars ($13,000,000.00) each fiscal year ("Annual Monetary Commitment") toward the construction and remediation of curb ramps within the City until 2030.  Consent Decree § 5.1.  After 2030, the City is required to appropriate a minimum of ten (10) percent of the City's pavement budget toward the construction and remediation of curb ramps until the City fulfills its obligations under the Consent Decree.  *Id*.

The Consent Decree also improves the City's curb ramp request system, requiring enhanced notice to requestors and reducing wait time for curb ramp fulfillment from approximately one year to 120 days.  *Id*. ¶ 11.4.

The adequacy of the relief obtained through settlement is further supported by the potential costs, risks, and delay of trial and appeal.  *See, e.g.*, *Castaneda v. Burger King*, No. C 08-04262 WHA, 2010 WL 2735091, at *3 (N.D. Cal. July 12, 2010); *Californians for Disability Rights, Inc. v. Cal.*

---

[5] The only exceptions arise where installation or upgrade is structurally impracticable, in conjunction with new construction, *see* 28 C.F.R. § 35.151(a)(2), or technically infeasible, in conjunction with alteration of an existing facility, *see* 28 C.F.R. § 35.151(b)(2).  If the City determines that installation or remediation of a curb ramp at a particular location is structurally impracticable or technically infeasible, the City will ensure that any ramp that is constructed or remediated complies with accessibility standards to the maximum extent feasible.  Determinations of structural impracticability or technical infeasibility will be supported by adequate documentation.  The City is not required to install curb ramps where sidewalks do not exist or on corners where there is no legal crossing.

788865.13

*Dept. of Transp.*, No. C 06-5125 SBA, 2010 U.S. Dist. LEXIS 62837, at *11 (N.D. Cal. June 2, 2010) ("The settlement affords significant and immediate relief that may never have materialized had the trial concluded."). Litigation and trial of this matter would require the expenditure of significant resources by the Parties and the Court, including time and costs spent on fact and expert discovery, further analysis of data, and depositions of Class Members, City employees, and experts. Dardarian Decl. ¶ 34. For example, in *Ochoa v. City of Long Beach*, Case No.: 2:14-cv-04307-DSF (FFMx) (C.D. Cal.),[6] a settlement was reached only after two-and-a-half years of contested litigation, including extensive discovery and motion practice. *Id.* The parties propounded and responded to hundreds of discovery requests, exchanged over 30,000 pages of documents, and conducted twenty-four depositions. *Id.* Similarly, in *Willits v. City of Los Angeles*, Case No. CV 10-05782 CBM (MRWx) (C.D. Cal.), the parties engaged in several years of extremely contentious litigation that involved proceedings in state and federal court at the trial and appellate court levels. *Id.* Before reaching a settlement, the parties propounded and responded to hundreds of discovery requests, exchanged over 4 million pages of documents, and conducted thirty-four depositions. *Id.* Litigation of this matter would be similarly protracted and costly.

The method of providing relief to the Settlement Class is also fair, reasonable, and adequate. As discussed above, curb ramp construction and remediation will be prioritized so that the most severe curb ramp barriers will be removed first. All High Priority Curb Ramp Barriers will be addressed by 2030. Less severe curb ramp barriers will be addressed by 2038. Also, all program access improvements will be performed in a way that gives preference to curb ramps that serve areas prioritized in 28 C.F.R. § 35.150 (*i.e.* government offices and facilities, transportation corridors, hospitals, areas of employment, and finally residential areas).

Finally, the Parties' agreement regarding attorneys' fees supports adequacy. The City has agreed not to oppose Plaintiff's modest request of reasonable attorneys' fees, expenses, and costs, which totals $725,253.09. Plaintiff filed a motion demonstrating the reasonableness of the requested attorneys' fees pursuant to the "lodestar" method, which is the appropriate method for determining

---

[6] GBDH served as class counsel in both the *Ochoa* and *Willits* matters.

11

788865.13

attorneys' fees in civil rights cases. *Muniz v. UPS*, 738 F.3d 214, 222 (9th Cir. 2013). Moreover, Plaintiff filed this motion thirty-five (35) days prior to the objection deadline so that Settlement Class Members had ample opportunity to review Plaintiff's request for attorneys' fees, expenses, and costs. No one objected to Plaintiff's motion.

In summary, the Settlement constitutes an excellent result for the Settlement Class, and it is unlikely that a court would order greater relief. Dardarian Decl. ¶ 37. The Consent Decree provides Plaintiff and the Settlement Class full relief for the class' claims. *Id.* Thus, the adequacy of the relief supports final approval of the proposed Settlement.[7]

### d.   The Consent Decree Treats Class Members Equitably Relative to Each Other.

The Consent Decree does not provide preferential treatment to any subset of the Settlement Class. All Settlement Class Members will share equally in the City-wide removal of curb ramp barriers. Once a particular curb ramp barrier is removed, Settlement Class Members will benefit equally from the improved access at that location. In addition, all Settlement Class Members will have an equal opportunity to avail themselves of the improved curb ramp request system.

As discussed below, subject to Court approval, Plaintiff Lashbrook would also receive a service award not to exceed $5,000, which Plaintiff submits is a fair and reasonable payment to recognize and compensate Plaintiff for the efforts and risks he took in stepping forward to assert claims, his participation in investigation and meetings with the City, and the work done on behalf of the Settlement Class to prosecute the claims. *See* Plaintiff's Motion for Service Award, ECF No. 20, and discussion *infra* at § III.B. This amount is in addition to Plaintiff Lashbrook's $50,000 damages payment.

Plaintiff Lashbrook's service award and damages payment do not make the Consent Decree inequitable. In the Ninth Circuit, service awards are routinely awarded and do not render class action settlements unfair. *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003). Moreover, $5,000 service

---

[7] The final factor set forth in Rule 23(e)(2)(C) is not applicable here as all agreements made by the Parties are set forth in the Consent Decree.

12

Notice of Joint Motion and Joint Motion for Final Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof - Case No. 5:20-cv-0136-NC

788865.13

awards are considered "presumptively reasonable" in the Northern District of California. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 U.S. Dist. LEXIS 116704, at *19 (N.D. Cal. Nov. 21, 2012). Similarly, there is nothing unfair about Plaintiff's $50,000 individual payment. The Consent Decree does not release damages claims for Settlement Class Members, and thus they may still pursue such claims against the City. Moreover, large disparities in the amount of damage awards between the named and unnamed class members are reasonable if justified by the record. *Staton,* 327 F.3d at 978; *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, at *36. Here, Plaintiff Lashbrook encountered thousands of curb ramp barriers in the City, and was thrown out of his wheelchair and left lying in the street on three occasions while descending non-compliant curb ramps. Lashbrook Decl. ¶ 8. His damages payment is fair compensation for those terrifying and life-threatening experiences and his general release of claims. His requested service award is fair and presumptively reasonable compensation for the efforts he rendered on behalf of the Settlement Class.

This factor supports final approval of the proposed Settlement.

### 3. The Remaining *Churchill/Hanlon* Factors Also Weigh Strongly in Favor of Final Approval.

#### a. The Extent of Discovery Completed and the Stage of the Proceedings

Courts require the parties to have conducted sufficient discovery to be able to make an informed decision about the value and risks of the action and come to a fair settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). The purpose of the Ninth Circuit's consideration of the extent of the parties' discovery is to ensure that counsel negotiating the pending settlement were fully informed of the facts and issues at stake. *Rodriguez*, 563 F.3d at 967 (affirming the district court's finding that discovery had been extensive where the court "could find that counsel had a good grasp on the merits of their case before settlement talks began"); *Hanlon*, 150 F.3d at 1027 (affirming the district court's approval of class settlement where "[t]here [was] no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims").

---

13

NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 5:20-CV-0136-NC

788865.13

Here, the Parties engaged in extensive informal discovery.  The Parties exchanged information regarding the status of existing curb ramps in the City's pedestrian right of way, the City's past and present policies concerning curb ramp construction and remediation, the legal obligations created by disability non-discrimination laws, and the Parties' settlement positions.  Dardarian Decl. ¶ 4. Moreover, during the Parties' negotiations, the City performed a complete survey of the corners at pedestrian crossings throughout its pedestrian right of way to identify all locations that were missing curb ramps and assess existing curb ramps for compliance with applicable federal and state accessibility standards.  *Id.* ¶ 5.  The curb ramp survey was divided into two phases: automated and manual.  *Id.*  The automated portion of the survey was performed using specialized optical equipment to determine the presence or absence of curb ramps at required curb ramp locations.  *Id.*  The manual portion of the survey involved on-site inspections of existing curb ramps to determine compliance with slope, surface, and other dimensional requirements.  *Id.*  The City completed its curb ramp survey in April 2018.  Dardarian Decl. ¶ 6.  The curb ramp survey provided the most important and relevant information needed for settlement, and demonstrates that the negotiations were fully informed and not rushed in any way.  *See Hanlon*, 150 F.3d at 1027.

Thus, by the time the Parties reached a settlement, the Parties had a clear view of the strengths and weaknesses of the relevant claims and defenses, and were able to make well-informed decisions about the Settlement's terms.  Dardarian Decl. ¶ 7.

Accordingly, this factor further supports final approval.

**b.  The Experience and Views of Counsel**

Courts must also consider the experience and views of counsel regarding the settlement.  *See Churchill Vill., L.L.C.,* 361 F.3d at 576-77.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'"  *See Toys "R" Us*, 295 F.R.D. at 455 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Class Counsel have extensive experience litigating and settling systemic disability access and other complex class actions, and have particular experience litigating and settling class actions

788865.13

involving the accessibility of municipalities' pedestrian rights of way.  Dardarian Decl. ¶ 36.  In Class

Counsel's experience and to their knowledge, this Settlement provides the most comprehensive relief

to date of any class action involving curb ramp installation and remediation, in that it has the highest

annual commitment of any settlement to date and a deadline for a fully curb ramp compliant pedestrian

right of way.  *Id*.  Under applicable law, the fact that qualified and well-informed counsel endorse the

proposed settlement as being fair, reasonable, and adequate weighs in favor of approval.  *See, e.g., In

re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018); *Koller v. Med Foods, Inc.*,

No. 3:14-CV-2400-RS, 2018 U.S. Dist. LEXIS 231901, at *10-11 (N.D. Cal. Aug. 29, 2018); *Brown v.

Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 U.S. Dist. LEXIS 19275, at *15-16 (N.D. Cal.

Feb. 17, 2016).

### c.    <u>The Presence of a Governmental Participant</u>

In determining the fairness of a settlement, the Court should consider whether the proposed

settlement includes a governmental participant.  Although the City of San Jose is a government entity

and Defendant herein, the Ninth Circuit in *Hanlon* was referring to settlements in which the

government was involved as a prosecutor.  *See Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-ACP, 2016

WL 3027744, at *5 (E.D. Cal. May 27, 2016) (citing *Hanlon*, 150 F.3d at 1026); *Marshall v. Holiday

Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (citing SEC approval of settlement as weighing in

favor of approval, where SEC was prosecuting a parallel action).  Accordingly, this factor weighs

neither for nor against final approval of the Consent Decree.  *See, e.g.*, *In re Animation Workers

Antitrust Litig.*, No. 5:14-cv-04062-LHK, 2016 WL 6841655, at *2 (N.D. Cal. Nov. 11, 2016) (where

there is no governmental participant, that factor is "irrelevant").

### d.    <u>The Reaction of Settlement Class Members to the Proposed Consent
Decree</u>

In determining the fairness of a settlement, the Court should consider class member objections.

The absence of a large number of objections to a proposed settlement raises a strong presumption that

the terms of the agreement are fair.  *See, e.g., Churchill Vill., L.L.C.,* 361 F.3d at 577 (approving a

settlement where "only 45 of the approximately 90,000 [.005 percent] notified class members objected

to the settlement"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 321; *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004).  The deadline for Settlement Class Members to submit objections to this Settlement was August 14, 2020.  ECF No. 14 ¶ 7.  To date, the Parties have received no objections to the proposed Settlement, including after the objection deadline.  Dardarian Decl. ¶ 14.  The reaction of Settlement Class Members supports final approval of the proposed Settlement.

**B.      The Proposed Service Award Should Be Approved.**

As discussed in Plaintiff's Motion for Service Award, ECF No. 20, Plaintiff requests that this Court approve a service award to Class Representative Artie Lashbrook for his important and substantial contributions to the Settlement Class with respect to the investigation, negotiation, and settlement of this matter.  As of the date of this submission, no one has objected to the proposed service award.  Dardarian Decl. ¶ 14.  Accordingly, for the reasons stated in his papers, Plaintiff respectfully requests that this Court grant the requested award.

**C.      Plaintiff's Motion for Reasonable Attorneys' Fees, Costs, and Expenses Should Be Approved.**

Plaintiff's Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses, and the points and authorities in support of his request, are the subject of separate submissions to the Court.  ECF No. 21.  Plaintiff seeks an award of reasonable attorneys' fees, costs, and expenses in the amount of $725,253.09.  ECF No. 21.  This amount is actually less than the amount agreed to in the Consent Decree, which was $734,627.50.  Consent Decree § 20.  It is also considerably less than Class Counsel's actual lodestar to date.  Dardarian Decl. ¶ 31.

No class member has objected to the proposed award of attorneys' fees, costs and litigation expenses since the Class Notice was disseminated.  Dardarian Decl. ¶ 14.  As explained in Plaintiff's Motion, the relief obtained here constitutes a truly "excellent result" for the class and fully supports the requested award.  *See* Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses at 8 and discussion and authorities therein.  Accordingly, Plaintiff respectfully requests that the Court grant the requested amount in full.

## IV.   CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court (1) grant final approval of the Consent Decree; and (2) retain jurisdiction over the Consent Decree and the Parties throughout the Consent Decree's Term.  By separate motions filed on July 10, 2020, Plaintiff also requests that the Court grant a service award of $5,000 to the Class Representative, and award Class Counsel reasonable attorneys' fees, costs, and expenses in the amount of $725,253.09, as set forth in Plaintiff's Motion for Reasonable Attorneys' Fees, Costs, and Expenses.

Dated:  August 28, 2020                     Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Linda M. Dardarian*
Linda M. Dardarian

*Attorneys for Plaintiff and Settlement Class*

THE CITY OF SAN JOSE

*/s/ Elisa Tolentino*
Elisa Tolentino

*Attorneys for the City of San Jose*

## SIGNATURE ATTESTATION

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatory on this e-filed document.

Dated: August 28, 2020                     */s/ Linda M. Dardarian*
Linda M. Dardarian

17

NOTICE OF JOINT MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 5:20-CV-0136-NC

788865.13