1  Linda M. Dardarian (SBN 131001)
   ldardarian@gbdhlegal.com
2  Andrew P. Lee (SBN 245903)
   alee@gbdhlegal.com
3  Beth Holtzman (SBN 316400)
   bholtzman@gbdhlegal.com
4  GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
5  Oakland, CA 94612
   Tel:  (510) 763-9800
6  Fax:  (510) 835-1417

7  Timothy P. Fox (SBN 157750)
   tfox@creeclaw.org
8  CIVIL RIGHTS EDUCATION AND
      ENFORCEMENT CENTER
9  1245 E. Colfax Avenue, Suite 400
   Denver, CO 80218
10 Tel:  (303) 757-7901

11 *Attorneys for Plaintiff and the Settlement Class*

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                   **SAN JOSE DIVISION**

15 ARTIE LASHBROOK, and all others similarly          **CLASS ACTION**
   situated,
16                                                    Case No.: 5:20-cv-1236-NC
            Plaintiff,
17                                                    **DECLARATION OF LINDA M.
                                                      DARDARIAN IN SUPPORT OF JOINT
18 vs.                                                MOTION FOR FINAL APPROVAL OF
                                                      CLASS ACTION SETTLEMENT, AND
19 CITY OF SAN JOSE,                                  STATEMENT OF COMPLIANCE WITH
                                                      NOTICE REQUIREMENTS
20          Defendant.
                                                      Date:     September 2, 2020
21                                                    Time:     1:00 p.m.
                                                      Dept:     Courtroom 5
22                                                    Before:   Hon. Nathanael Cousins

23

24

25

26

27

28

I, Linda M. Dardarian, declare as follows:

1.     I am a member in good standing of the Bar of the State of California and a partner at the law firm of Goldstein, Borgen, Dardarian & Ho ("GBDH"), in Oakland, California.  I am lead counsel for Plaintiff and the Settlement Class in this matter.  I am providing this Declaration in support of the Parties' Joint Motion for Final Approval of Class Action Settlement and to demonstrate compliance with the class notice requirements of the Court's Order Granting Preliminary Approval of Class Action Settlement, ECF No. 10.  I have personal knowledge of the facts set forth in this Declaration and could and would testify competently to them.

2.     A true and correct copy of the fully executed Consent Decree, for which final approval is sought by this Motion, is attached as Exhibit 2 to the Declaration of Linda M. Dardarian in Support of Joint Motion for Preliminary Approval of Class Action Settlement, ECF No. 10-2 (filed on April 21, 2020) and is referred to herein as the "Settlement" or "Consent Decree."

## FACTUAL BACKGROUND

3.     The full factual background supporting the Settlement is set forth in the Declaration of Linda M. Dardarian in Support of Joint Motion for Preliminary Approval of Class Action Settlement, ECF 10-1.  Pertinent portions are reiterated herein below.

4.     Parties negotiated the proposed Settlement over a six-year period beginning in February 2014.  Over the first two and half years of negotiation, the Parties exchanged information regarding the status of existing curb ramps in the City's pedestrian right of way, the City's past and present policies concerning curb ramp construction and remediation, the legal obligations created by disability non-discrimination laws, and the Parties' settlement positions.

5.     In November 2016, the Parties finalized an Interim Settlement Agreement that set forth certain preliminary obligations while they continued to negotiate a full resolution of Plaintiff's claims. The Interim Settlement Agreement required the City to perform a complete survey of the City's curb ramps to identify all locations that were missing curb ramps and assess existing curb ramps for compliance with applicable federal and state accessibility standards.  The curb ramp survey was divided into two phases: automated and manual.  The automated portion of the survey was performed using specialized optical equipment to determine the presence or absence of curb ramps at required

1

788867.8

1     curb ramp locations.  The manual portion of the survey involved on-site inspections of existing curb

2     ramps to determine compliance with slope, surface, and other dimensional requirements.  The Interim

3     Settlement Agreement also required the City to construct approximately 2,700 curb ramps over a two-

4     year period and resolve curb ramp requests within one-hundred twenty (120) days of submission.

5           6.      The City completed its curb ramp survey in April 2018.  It revealed that there were

6     22,885 existing curb ramps within the City.  20,849 curb ramps, or 91% of all curb ramps within the

7     City, were non-compliant with applicable disability access standards set forth in the 2010 Americans

8     with Disabilities Act Access Standards ("2010 ADAS") or Title 24 of the California Building Code

9     ("Title 24" or "CBC").  The survey found that 6,772 curb ramps were missing from locations where

10     they are required, and 14,611 existing non-compliant curb ramps contained "High Priority Curb Ramps

11     Barriers." [1]  Another 6,238 curb ramps did not comply with federal and state accessibility standards but

12     were not defined as "High Priority Curb Ramps Barriers."

13           7.      With the survey completed, the Parties had a clear view of the strengths and weaknesses

14     of the relevant claims and defenses, and were able to make well-informed decisions about the

15     Settlement's terms.  Accordingly, they proceeded to negotiate the Consent Decree that is presently

16     before the Court for final approval.  As a result of the Parties' robust negotiations and cooperative

17     information sharing, the Parties reached a settlement, the terms of which are set forth in the Consent

18     Decree.

19           8.      The last issue negotiated by the Parties was Plaintiff's request for reasonable attorneys'

20     fees, expenses, and costs.  Only after resolving all class injunctive relief issues and then Plaintiff's

21     damages and service award payments did the Parties commence negotiations regarding Plaintiff's

22     reasonable attorneys' fees, expenses, and costs.  Accordingly, this eliminated the possibility of the

23

24     [1] "High Priority Curb Ramps Barriers" include the following: 1) locations that are missing curb ramps
 (missing curb ramps are in addition to the 14,611 existing non-compliant High Priority Curb Ramps);

25     2) curb ramps with less than 32 inches clear width; 3) curb ramps with running slopes exceeding 10%;
 4) curb ramps with cross slopes exceeding 4%; 5) curb ramps with non-flush transitions; 6) curb ramps

26     with counter slopes exceeding 10%; 7) curb ramps with side flare slopes exceeding 12.5%; 8) curb
 ramps with side flare slopes exceeding 10% where top landings are not provided; 9) curb ramps with

27     gaps or vertical edges greater than 1 inch; 10) parallel curb ramps with bottom landings that have
 slopes exceeding 4%; 11) parallel curb ramps with top landings that have slopes exceeding 4%; 12)
 parallel curb ramps with top landings that have running slopes exceeding 10%; and, 13) curb ramps

28     with a combination of non-compliant running slopes, counter slopes, and non-flush transitions.

788867.8

1  payment of "excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf

2  of the class." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

3  Furthermore, the agreed-upon attorneys' fees, expenses and costs of $725,253.09 are modest for a

4  matter that has been pending for over six years.

5         9.     On February 19, 2020, Plaintiff Artie Lashbrook filed this class action, asserting claims

6  for injunctive relief against the City of San Jose based on alleged violations of the ADA, the

7  Rehabilitation Act of 1973, California Government Code Section 11135, and the California Disabled

8  Persons Act (California Civil Code Sections 54, *et seq.*).  *See* Complaint, ECF No. 1.

9  **SETTLEMENT NOTICE**

10         10.    The Court's Order Granting Preliminary Approval of Class Action Settlement certified

11  the Settlement Class pursuant to Federal Rule Civil Procedure 23(a) and (b)(2) and directed notice of

12  the Settlement to the Settlement Class, among other things.  ECF No. 14.  Attached as **Exhibit B** to the

13  Declaration of Stuart Kirkpatrick in Support of Joint Motion for Final Approval of Class Action

14  Settlement and Statement of Compliance with Notice Requirements, filed herewith, is a true and

15  correct copy of the Court-approved Notice of Proposed Settlement of Class Action Lawsuit

16  ("Settlement Notice"), which explains the litigation and the terms of the Consent Decree, including the

17  injunctive relief, release of claims, and amounts requested for Class Representative's service award,

18  damages payment, and Class Counsel's requested attorneys' fees, costs, and expenses.  The Settlement

19  Notice also informs Settlement Class Members regarding how to object to the Settlement Agreement.

20  Further, it provides a toll-free number for Settlement Class Members to call to obtain further

21  information about the Settlement or settlement documents.

22         11.    On June 8, 2020, Class Counsel provided a copy of the Settlement Notice to thirty-three

23  organizations that serve individuals with Mobility Disabilities.  A list identifying these organizations

24  was filed as Exhibit E to the Consent Decree, ECF No. 10-1.  Further details regarding the distribution

25  of the Settlement Notice to these organizations is set forth in the Declaration of Stuart Kirkpatrick in

26  Support of Joint Motion for Final Approval of Class Action Settlement and Statement of Compliance

27  with Notice Requirements, filed herewith.

28

788867.8

12.     On June 16, 2020, Class Counsel posted copies of the Settlement Notice in English, Spanish, and Vietnamese on the GBDH and CREEC websites, and they have remained posted since then.  *See* GBDH website *available at* https://gbdhlegal.com/cases/lashbrook-v-city-of-san-jose/ & CREEC website *available at* https://creeclaw.org/notice-of-proposed-settlement-of-class-action-lawsuit-lashbrook-v-city-of-san-jose/.  Each version of the Settlement Notice was formatted so that it could be recognized and read by software commonly used by individuals with visual impairments to read web pages.  I am informed and believe that he notices comply with version 2.1 of the Web Content Accessibility Guidelines ("WCAG") conformance level AA.

13.     Class Counsel have been informed by Defendant City of San Jose (the "City") that it has complied with the remainder of this Court's preliminary approval order regarding the dissemination of the Settlement Notice.  Further information regarding the posting and publication of the Settlement Notice is set forth in the Declaration of Elisa Tolentino in Support of Joint Motion for Final Approval of Class Action Settlement and Statement of Compliance with Notice Requirements, filed herewith.

## OBJECTIONS TO THE SETTLEMENT

14.     The deadline to object to the proposed Settlement was August 14, 2020.  As of August 28, 2020, no Settlement Class Member has objected to the Settlement.

## TERMS OF THE PROPOSED CONSENT DECREE

15.     Class Counsel are confident that the curb ramp work required by the Consent Decree is sufficient to provide a system of curb ramps that, when viewed in its entirety, will be readily accessible to persons with mobility disabilities.  The Consent Decree includes the following negotiated and agreed-upon terms:

16.     The Settlement Class, as set forth in the Consent Decree, is defined as follows: all persons (including residents of and/or visitors to the City of San Jose) with any Mobility Disability, who, at any time prior to the Court granting final approval of the Consent Decree, have been denied full and equal access to the City's pedestrian right of way due to the lack of a curb ramp or a curb ramp that was damaged, in need of repair, or otherwise in a condition not suitable or sufficient for use.  Consent Decree § 2.19.  The Settlement Class seeks injunctive relief only.  It does not seek damages.

788867.8

17.     <u>Installation and Remediation of Curb Ramps:</u>  The Consent Decree ensures that the City will remediate all missing and non-compliant curb ramps by 2038.  It requires the City to construct 6,772 missing curb ramps and remediate 14,611 non-compliant, high priority curb ramps by the end of 2030.  The remaining 6,238 non-compliant curb ramps that are not considered high priority will be remediated by 2038 (collectively "Curb Ramp Construction Commitment").  Consent Decree § 4.3. On average, the City will construct or remediate 1,944 high priority curb ramps per year (more than three times the average rate of installations before the Parties commenced negotiations) between the effective date and 2030, and 807 low priority curb ramps per year between the years 2031 and 2038. Consent Decree § 5.2.  All curb ramp construction and remediation will be performed in compliance with federal and state disability access standards, and will count towards the Curb Ramp Construction Commitment.  *See* 28 C.F.R. §§ 35.150(a), 35.151(a), (b).

18.     In order to ensure that the City meets the Curb Ramp Construction Commitment, the Consent Decree also requires the City to appropriate thirteen million dollars ($13 million) each fiscal year ("Annual Monetary Commitment") toward the construction and remediation of curb ramps within the City's pedestrian right of way until 2030.  Consent Decree § 5.1.  After 2030, the City is required to appropriate a minimum of ten (10) percent of the City's pavement budget toward the construction and remediation of curb ramps until the City fulfills its obligations under the Consent Decree.  *Id*.

19.     The Curb Ramp Construction Commitment and Annual Monetary Commitment are concurrent obligations that must each be met throughout the term of the Consent Decree.  Consent Decree §§ 4 & 5.  In other words, the Consent Decree requires that the City appropriate the Annual Monetary Commitment each year and meet the milestones established by the Curb Ramp Construction Commitment.  The City, however, retains some flexibility in how it will remediate the curb ramp barriers identified through the survey.  For example, if the City is unable to appropriate the Annual Monetary Commitment due to a recession, it will remain compliant with the Consent Decree so long as it maintains an average rate of curb ramp construction and remediation of at least 1,944 high priority curb ramps between the Effective Date through 2030 or 807 low priority curb ramps per year between 2031 and 2038.  *Id*. § 5.2.  The City will also remain compliant if it demonstrates that the sum of the appropriations for the two previous fiscal years plus the fiscal year with appropriations below the

788867.8

Annual Monetary Commitment is equal to three times the Annual Monetary Commitment. *Id*. Finally, the City will also remain compliant if it agrees to an additional appropriation over the next two fiscal years that is the equivalent of the difference between the Annual Monetary Commitment and the appropriation below the Annual Monetary Commitment. *Id*. § 5.2.

20.     Additionally, the Consent Decree outlines procedures to address the unlikely possibility of elimination of two funding sources, Measure B – City of San Jose – Sales Tax, or the Road Repair and Accountability Act of 2017 (SB 1 - 2017-18 California legislative session) by local or statewide ballot measure, an act of the California State Legislature, or court order.  Consent Decree § 27.  As an initial step, the City must promptly notify Class Counsel of its potential inability to appropriate the Annual Monetary Commitment due to the elimination of funding from Measure B or the Road Repair and Accountability Act of 2017, and the date by which the funding will likely terminate.  *Id*. § 27.1 Thereafter, the City must use best efforts to find alternate funding sources to fulfill the Annual Monetary Commitment and pursuant to Class Counsel's request, generate a written statement identifying other potential funding sources.  *Id*. §27.2.  If the Parties are unable to reach an agreement on the use of alternate funding sources, the Parties will attempt to resolve any disputes through the Dispute Resolution process set forth in the Consent Decree.  *Id*. § 27.3.  If that process is not successful, Plaintiff is entitled to discovery regarding the City's financial status and ability to appropriate the Annual Monetary Commitment and may file a motion with the District Court to enforce or modify the Consent Decree.  *Id*. § 27.4.  Plaintiff may also seek court approval to terminate the Consent Decree and litigate Plaintiff's claims on behalf of himself and the Settlement Class.  *Id*.  If litigation recommences, the City agrees that the currently defined Settlement Class shall be certified pursuant to Federal Rules of Civil Procedure 23(b)(2) and the City shall maintain and fund the Curb Ramp Request system through at least 2038.  *Id*.

21.     <u>Prioritization and Transition Plan</u>:  Curb ramps constructed or remediated pursuant to the City's program access obligation (which covers locations that are not subject to new constriction or alteration) will be prioritized pursuant to two sets of factors.  First, to the extent possible, the City will prioritize the remediation of High Priority Curb Ramp Barriers.  Consent Decree § 8.1.  Program Access improvements will also be prioritized consistent with federal regulations as follows: a)

Government offices, facilities, and schools (including the pedestrian rights of way adjacent to facilities owned or operated by the City, and the paths of travel leading from such adjacent pedestrian rights of way to the primary entrances to such facilities); b) Transportation corridors; c) Hospitals, medical facilities, assisted living facilities and other similar facilities; d) Places of public accommodation such as commercial and business zones; e) Facilities containing employers; and f) Residential neighborhoods. *See* 28 C.F.R. § 35.150; Consent Decree § 8.1.

22. The prioritization of curb ramp construction will be set forth in the City's updated ADA Transition Plan. Within two years of the effective date of the Decree, the City Council will be presented with an amended ADA Transition Plan for adoption. Consent Decree § 10.1. This amended ADA Transition Plan will comply with 28 C.F.R. § 35.150(d) and 45 C.F.R. § 84.22(e). *Id*. § 2.24. The Transition Plan will include a schedule for accessible curb ramp construction and remediation, consistent with the terms of the Consent Decree. *Id*. § 10.1. To the extent known, the Transition Plan will also include locations of planned new construction or alterations that trigger the obligation to construct new curb ramps. *Id*. The City must also provide a draft of the updated Transition Plan to Class Counsel for review and comment at least thirty (30) days before presentation to City Council for adoption. Consent Decree § 10.3.

23. <u>Curb Ramp Request Program</u>: The Consent Decree also requires the City to maintain a program through which people with mobility disabilities may submit requests for the construction or remediation of curb ramps in specific locations throughout the City. Consent Decree § 11.1. Curb Ramp Requests can be made through an easily locatable form on the City's website that complies with Web Content Accessibility Guidelines (WCAG), telephone, electronic mail, standard mail, and other non-onerous methods for making requests. *Id*. § 11.1. Within ten (10) days of receipt, the City must notify the requestor that the request has been received. *Id*. § 11.2. The City must document each Curb Ramp Request and use best efforts to investigate each request within thirty (30) days of its submission. *Id*. § 11.3. The City will use its best efforts to construct or remediate each requested curb ramp within one-hundred twenty (120) days of submission of the request. *Id*. § 11.4.

24. If the City is unable to fulfill the Curb Ramp Request by the estimated date, the City must notify the requestor and provide a revised estimated date by which the Accessible Curb Ramp

7

788867.8

1  will be constructed, remediated, or maintained. *Id*. § 11.3.  Individual requests that exceed $100,000 in

2  estimated costs will be subject to public bidding and exempt from the 120-day deadline. *Id*. § 11.4.

3      25.   Maintenance:  The Consent Decree requires the City to maintain all Accessible

4  Pedestrian Facilities over which it has responsibility, ownership or control so that those facilities are

5  readily accessible to and usable by persons with Mobility Disabilities, except for isolated or temporary

6  interruptions in access due to maintenance or repairs.  Consent Decree § 12.  If Accessible Curb

7  Ramps are not available due to maintenance or repairs, the City must provide an alternative accessible

8  route. *Id*.  The City must identify the alternative route through signage at the subject location. *Id*.

9      26.   Reporting:  On an annual basis by the end of the second quarter of each fiscal year of

10  the Consent Decree, the City will provide a written report ("Annual Report") regarding the status of

11  the City's compliance with the Consent Decree.  Consent Decree § 13.1.  The Annual Report will

12  include summary information detailing the number of curb ramps installed and remediated and their

13  locations, and the number and locations of curb ramps installed or remediated via the Curb Ramp

14  Request Program described above.  Each report shall include the following information, if applicable

15  to the reporting period: (a) dollars appropriated for Accessible Curb Ramps during the reporting

16  period; (b) dollars expended for Accessible Curb ramps during the reporting period; (c) the number of

17  missing curb ramps constructed during the reporting period by City forces and third parties to the

18  extent known by the City; (d) the number of High Priority Curb Ramp Barriers remediated during the

19  reporting period by City forces and third parties to the extent known by the City; (e) the number of

20  Low Priority Curb Ramp Barriers remediated during the reporting period by City forces and third

21  parties to the extent known by the City; (f) a description of the status of all pending Curb Ramp

22  Requests received by the City during the reporting period, including applicable response times; (g) the

23  number of non-compliant curb ramps constructed to the maximum extent feasible, or not constructed,

24  due to Technical Infeasibility or Structural Impracticability. *Id*. § 13.1.  Additionally, the City will

25  ensure that Plaintiff and Class Counsel have access to the City's GIS Database or equivalent databases

26  upon Plaintiff's reasonable request throughout the term of the Decree. *Id*. § 13.2.

27      27.   Monitoring:  Throughout the Term of the Consent Decree, the City is required to notify

28  Plaintiff and Class Counsel of any changes to the City's drawings and/or designs regarding Accessible

788867.8

Curb Ramps and provide Plaintiff and Class Counsel with updated drawings and/or designs of the curb ramps. Consent Decree § 14. Plaintiff and Class Counsel may inspect newly constructed or altered curb ramps in order to monitor compliance with the Consent Decree. *Id.* Plaintiff and Class Counsel are also entitled to review the City's survey database and curb ramp construction database, upon reasonable request. *Id.*

28.   Dispute Resolution:  Enforcement of the Consent Decree will be subject to the continuing jurisdiction of this Court. If either of the Parties believes that a dispute exists relating to any violation of or failure to perform any of the provisions, that Party will first provide a written statement describing the alleged violation or failure to perform with particularity, after which the other Party will have ten (10) business days to provide a written response and thirty (30) days to cure the alleged violation or failure to perform. Consent Decree § 16.1. If the violation or failure to perform is not cured within that time frame, the Parties will meet and confer in person or by telephone and attempt to resolve the dispute on an informal basis for a period of at least thirty (30) days. *Id.* If the Parties are unable to resolve the dispute informally, they will engage in good faith efforts to resolve it through mediation. *Id.* § 16.2. If mediation fails, then either Party may file a motion with the Court to enforce the Consent Decree. *Id.* § 16.3.

29.   Release of Class Claims:  In exchange for the injunctive relief proposed in the Consent Decree, Plaintiff and members of the Settlement Class shall release any injunctive, declaratory, or non-monetary claims against the City that were brought, could have been brought, or could be brought now or in the future by the Settlement Class relating to or arising from any of the City's alleged actions, omissions, incidents, or conduct related to the installation, remediation, repair or maintenance of curb ramps in the City's pedestrian right of way at any time prior to the effective date of the Consent Decree through the end of the Term. Consent Decree § 18. The release excludes claims for monetary damages, personal injuries or property damage with respect to unnamed Settlement Class Members. *Id.* It also excludes claims based on components of the City's sidewalk system other than curb ramps. *Id.*

30.   Payments to Plaintiff Lashbrook:  Subject to Court approval, the City will pay Plaintiff Lashbrook a $5,000 award in recognition of the services he rendered to the Settlement Class. Consent

788867.8

1   Decree § 17.  Class Counsel has filed a separate motion for approval of the proposed $5,000 service

2   award with the Court.  Consent Decree § 15.5; Pls. Mot. for Service Award, ECF No. 20.  Plaintiff

3   Lashbrook will also receive a damages payment of $50,000 in exchange for a release of all monetary

4   claims, including actual and statutory damages claims, related to his personal encounters with non-

5   compliant curb ramps in the City's pedestrian right of way.  Consent Decree § 19.

6         31.   <u>Class Counsel's Attorneys' Fees, Expenses, and Costs:</u>  Plaintiff's Motion for an Award

7   of Reasonable Attorneys' Fees, Costs, and Expenses was filed with the Court on July 10, 2020.  ECF

8   No. 21.  Plaintiff seeks $725,253.09 in reasonable attorneys' fees, costs, and expenses, which the City

9   does not oppose.  Consent Decree § 20.2.  The amount that Plaintiff seeks is significantly less than the

10  total lodestar that Class Counsel have incurred throughout this case.  Since the filing of Plaintiff's

11  Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses, Class Counsel have

12  expended more than an additional $40,000 in lodestar.  In total, Class Counsel have incurred a lodestar

13  of approximately $900,000 in this case, but will at most receive payment of $725,253.09 in attorneys'

14  fees and costs pursuant to Plaintiff's motion.  This further demonstrates that Plaintiff's request is

15  reasonable.

16        32.   The City will also pay Plaintiff's reasonable attorneys' fees, costs, and expenses for

17  work done in connection with monitoring the Consent Decree, subject to limitations specified in the

18  Consent Decree, including a cap of $75,000 per year for years 2020 through 2022, and a cap of

19  $50,000 per year for years 2023 through the expiration of the Term of the Consent Decree.  Consent

20  Decree § 21.1.  The Consent Decree also provides compensation to the prevailing party for dispute

21  resolution under civil rights jurisprudence.  *Id.* § 21.4.

22       **<u>FAIRNESS AND ADEQUACY OF THE PROPOSED CONSENT DECREE</u>**

23        33.   The relief provided by the proposed Consent Decree is very substantial.  The Consent

24  Decree requires the City to remediate all missing and non-compliant curb ramps by 2038.  The

25  comprehensive injunctive relief provided by the Settlement vindicates the equality, integration, and

26  dignity mandates of the Americans with Disabilities Act.

27        34.   Plaintiff and the proposed Settlement Class would incur significant costs and face many

28  potential risks if the case were to proceed to trial.  Litigation and trial of this matter would require the

788867.8

1  expenditure of significant resources by the Parties and the Court, including resources and time spent on

2  fact and expert discovery, further analysis of data, depositions of class members, City employees, and

3  experts.  For example, in *Ochoa v. City of Long Beach*, Case No. 2:14-cv-04307-DSF (FFMx) (C.D.

4  Cal.), another case challenging the inaccessibility of a city's pedestrian right of way in which my firm

5  was Class Counsel, a settlement was reached only after two-and-a-half years of contested litigation,

6  including extensive discovery and motion practice.  The parties propounded and responded to hundreds

7  of discovery requests, exchanged over 30,000 pages of documents, and conducted twenty-four

8  depositions.  Similarly, in *Willits v. City of Los Angeles*, Case No. CV 10-05782 CBM (C.D. Cal.),

9  another pedestrian right of way access class action in which my firm was Class Counsel, the parties

10  engaged in several years of extremely contentious litigation that involved proceedings in state and

11  federal court at the trial and appellate court levels.  Before reaching a settlement, the parties

12  propounded and responded to hundreds of discovery requests, exchanged over 4 million pages of

13  documents, and conducted thirty-four depositions.  Litigation of this matter would be similarly

14  protracted and costly.  Additional resources would be required to complete post-trial briefing and

15  resolve any appeals.  In short, this Settlement obviates the need for further costly and time-consuming

16  litigation.

17       35.     Moreover, litigating and trying this case, along with possible appeals, could

18  significantly delay resolution of this matter.  Based on my experience in other civil rights class actions,

19  post-trial appeals can delay final resolution of a case by several years.  In contrast, under the proposed

20  Consent Decree, improvements will begin immediately.  Given the importance of the accessibility of

21  the City's pedestrian right of way to the lives of Settlement Class Members, the difference between the

22  possibly long delay involved in continued litigation and the immediate improvements promised by the

23  proposed Consent Decree is an important consideration.

24       36.     My firm and my co-counsel have extensive experience litigating and settling systemic

25  disability access and other complex class actions, and have particular experience litigating and settling

26  class actions involving the accessibility of municipalities' pedestrian rights of way.  My colleague

27  Andrew Lee and/or I have been lead counsel in seven such class actions, including this one, and we are

28  keep abreast of developments and results in other similar actions throughout the country that have been

completed or are being prosecuted.  In my experience and to my knowledge, this Settlement provides the most comprehensive relief to date of any class action involving curb ramp installation and remediation, in that it has the highest annual commitment of any settlement to date and a deadline for a fully curb ramp compliant pedestrian right of way.

37.    I have carefully assessed the risks and inherent delays that the Settlement Class would face if this litigation continued.  It is my professional opinion, based on my experience, that those risks and delays are substantial.  In light of those risks and delays, and taking into account the comparative benefits provided to the Settlement Class Members through immediate remediation of the City's curb ramps, it is my view that the settlement is fair, reasonable, and adequate and constitutes an excellent result for the Settlement Class.  The Consent Decree provides Plaintiff and the Settlement Class full relief for their claims, and it is unlikely that a court would order greater relief.

## **CONCLUSION**

38.    As described above and set forth in the Consent Decree itself, this Settlement provides extraordinary injunctive relief for the Settlement Class.  Considering the totality of this relief, the substantial risk and delay of continued litigation, and the importance of the accessibility of the City's pedestrian right of way and its curb ramps to Settlement Class Members, the proposed Settlement is fair, reasonable and adequate and should be approved by this Court.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct, and that this Declaration was executed on August 28, 2020, in Oakland, California.

*/s/ Linda M. Dardarian*
Linda M. Dardarian

DARDARIAN DECL. IN SUPP. OF JT. MOT. FINAL APPROVAL OF CLASS ACTION SETTLEMENT - CASE NO. 5:20-CV-12360-NC

788867.8